## CHARLESTON.

H. D. RUMMEL v. W. M. YOUNG et al.

(No. 6261)

Submitted February 19, 1929.    Decided May 28, 1929.
(Rehearing Denied July 19, 1929).

*Payne, Minor & Bouchelle,* for appellant.
*Hogg & Hogg* and *Thomas P. Ryan,* for appellees.

LITZ, JUDGE:

The plaintiff, H. D. Rummel, appeals from a decree of the circuit court dismissing his bill which seeks (as its ultimate object) an injunction restraining pending and threatened actions at law upon three several written instruments.

In the spring of 1919, the defendant, William M. Young, with the view of leasing (for oil and gas) a tract of seven acres of land he then owned in Kanawha county, divided it into seven equal parts, and conveyed one part each to the defendants, Charles G. Young, Noah C. Young, Nellie Young, H. R. Young and J. O. Myers; the first four grantees being children, and the fifth a son-in-law, of the grantor. Thereafter, as the result of negotiations between the parties, the plaintiff entered into separate written agreements (identical in form except the names of the owners and descriptions of the respective parcels of land involved) with William M. Young, Charles G. Young, Noah C. Young and Nellie Young, dated June 25, 1919, for the leasing of the one acre parcel belonging to each for oil and gas purposes. The agreement with William M. Young follows:

> "Memorandum of Agreement, made the 25th day of June, 1919, between William M. Young, party of the first part, and H. D. Rummel, party of the second part.
>
> Whereas, the first party has this day executed and acknowledged a certain lease for oil and gas purposes to the second party, covering a tract of one acre in Big Sandy District, Kanawha County, West Virginia, in what is known as the sub-division of Lot No. 1, of the J. M. Bird 35-acre tract, in which lease Nellie Young, the wife of the first party, has duly joined; and,
>
> Whereas, a chancery proceeding is to be instituted immediately for the purpose of leasing to said H. D. Rummel for oil and gas purposes another tract of one acre of land lying in said sub-division of Lot No. 1, belonging to H. R.

Young, an infant; and an effort is being made by W. M. Young and others to obtain from Charles G. Young, now in France, a similar lease for oil and gas under another tract of one acre in said sub-division; and,

Whereas, it is desired to deposit said first mentioned lease in escrow, along with the sum of One Thousand Dollars ($1,000.00), the price thereof, subject to the terms and conditions herein mentioned..

Now, therefore, This Memorandum Witnesseth: That in consideration of the sum of One Dollar cash in hand paid, and other good and valuable considerations, receipt whereof is hereby acknowledged, the party of the first part hereby agrees forthwith to deposit said lease in the Kanawha National Bank of Charleston, West Virginia, along with the check of said H. D. Rummel for the sum of One Thousand Dollars, payable to the order of the said party of the first part, and that the same shall be held by said bank pending the maturity and hearing of the chancery cause aforesaid, and until five days after notice is given said bank by J. O. Myers, guardian of H. R. Young, that a final decree has been entered confirming a lease of said infant's premises and pending, also, the receipt by said bank of an executed lease from said Charles G. Young in substantially the same terms as the lease deposited herewith, of the receipt of which said H. D. Rummel shall likewise have five days notice; and said H. D. Rummel within said time shall have the right to have delivered to him the said lease of the party of the first part, and thereupon said check for $1,000 shall be held by said bank subject to the order of the first party, who shall be promptly notified thereof at Welford, Roane County, West Virginia.''

A non-productive well having been completed within a few hundred feet of the one acre tracts before leases for those belonging to Charles G. and H. R. Young had been executed and delivered, the plaintiff refused to accept any of the leases and countermanded his checks. This well was in the course of drilling at the time of the execution of the several agreements, and the plaintiff states that he then contemplated its

probable completion before leases for the parcels belonging to Charles G. and H. R. Young could be executed and delivered so that he might be in a position by that time to intelligently exercise an option to accept or reject all of the leases, depending upon the results of the well. Actions have been instituted (and others are threatened) upon the contracts by the defendants.

The bill alleges that the writing "is, in legal intendment, an option", but by mutual mistake of the parties and the scriviner "does not distinctly set forth that it is an option only, in that it uses the word 'right' instead of the word 'option' "; and prays that the word "option" be substituted for the word "right", and that the defendants be enjoined from instituting or prosecuting any action at law upon said agreements. Evidence was taken to establish the terms of the alleged agreements or understandings between the parties before executing the writings; that adduced by the plaintiff tends to show that he was to have an option to accept or reject the leases, while the general import of the testimony offered by the defendants is that the escrow leases were to become binding on the lessee when leases for the Charles G. and H. R. Young parcels had been executed and delivered. As the plaintiff did not deal directly with the defendants, it is very natural for him to have understood that the arrangement would be in the nature of an option, while the defendants thought it was an out-right leasing of the properties binding him upon the execution and delivery of leases covering the interests of Charles G. and H. R. Young. But we must test jurisdiction before proceeding to interpret the written instruments or to consider evidence of previous oral agreements or understandings between the parties.

A demurrer to the bill was overruled. The grounds relied on for equity jurisdiction are (1) that the suit is maintainable for the purpose of reforming the written instruments, and (2) that it is justified as a means of preventing multiplicity of suits.

The bill not only fails to charge that the plaintiff is required, under the written contracts, to accept the escrow leases upon the execution and delivery of leases for the parcels belonging

to Charles G. and H. R. Young, but on the contrary, alleges that said instruments, properly interpreted, confer upon the plaintiff the optional right to accept or reject all of the leases within five days after notice of the execution and delivery to the bank of leases for the Charles G. and H. R. Young tracts. "Where the plaintiff in an injunction bill avers that a suit in assumpsit is pending against him arising out of a contract between himself and defendant, the meaning and legal effect of which contract is construed differently by each party; and if susceptible of the construction placed upon it by his opponent, then the contract is asked to be reformed on the ground of mutual mistake, so as to express the true intention of the parties as contended for by plaintiff; and seeks to enjoin the action at law until that can be done, a demurrer to the bill should be sustained for want of equity jurisdiction." *Moore* v. *Hamilton*, 93 W. Va. 529. The opinion, by JUDGE LIVELY, states: "It is argued that this suit is brought for the purpose of reforming the contract, and equity having taken jurisdiction to reform, and finding no reason for reformation would retain the case for the purpose of construing the contract and ending litigation. But, can we say the bill is for the purpose of reforming the contract? The bill charges that the contract is not susceptible of the interpretation put upon it by defendant Hamilton. It says that the true meaning hereof, which was the true intent of the parties, is that Moore sold to Hamilton his right, title and interest in the coal operations as shown by his title papers and assignments mentioned in the contract itself. Then the bill says if that construction be wrong, and the writing is susceptible of the interpretation placed upon it by Hamilton, it ought to be reformed, so as to show the true intent. This is nothing more than an attempt to have the court of equity interpret the writing. 'Equity will not take cognizance of an action brought nominally to reform an instrument, but really to obtain a judicial construction, which will make its meaning certain.' *Husted* v. *Van Nese*, 1 App. Div. Repts. N. Y. 120; affirmed in 158 N. Y. Repts. 104." Although the prayer of the bill for reformation, in this case, is not in terms dependent upon an interpretation of the instruments favorable to the defendants, it is

so, in effect. Courts will not reform written contracts which already express the true intention of the parties; nor will equitable jurisdiction be exercised for the sole purpose of construing written instruments. The construction of the contracts, under consideration, is primarily with the circuit court in the law actions; but for the benefit of all parties, we think it proper to here intimate tentatively that they have the earmarks of options.

It is urged that the plaintiff is entitled to equitable relief to prevent multiplicity of suits because the same facts and law are involved in each of the claims asserted against the plaintiff by the several defendants. This, according to the weight of authority, is not sufficient. ''What seems at present to be the prevailing rule, and must be accorded the distinction of being supported by the weight of authority, is that the mere fact that there is a community of interests in the questions of law and fact presented by a given controversy, or in the kind and form of relief demanded by or against each of several individuals will not warrant equitable interposition by way of injunction. This rule precludes a court of equity from affording such relief where there are several tort actions brought by different plaintiffs, against the same defendant, where there is merely a community of interests in the questions of law and fact involved and no common title, no community or multiplicity of interests or of right in the subject matter. * * * These decisions are authority for the doctrine, which seems to be the prevailing one, that there must be a community of interest in the subject matter and that a community of interest in the questions of law and fact involved is not sufficient to authorize the issuance of an injunction on the ground of multiplicity of suits.'' 14 R. C. L., 352. 32 C. J., 90, states the law thus: ''In some decisions it has been held that, in order to give jurisdiction to a court of equity to enjoin numerous actions by different plaintiffs against the same defendant, it will be sufficient if the causes of action grew out of the same transaction or occurrence and the questions of law or fact in all the actions are the same. On the other hand, there are many decisions which hold that merely a community of interests in the questions of law and fact

involved is not sufficient, but that there must also be *a common interest in the subject matter involved in each action;* and that it is not sufficient that the actions are based merely on the same transaction and depend for their solution upon the same questions of law and fact." *Crawford* v. *Bosworth,* 72 W. Va. 543, holds that where several persons are severally liable to another under a single contract, equity has no jurisdiction to enjoin separate actions of law thereon on the ground of multiplicity of suits. In the opinion of the case, it is said: "Nor is there merit in the contention in this case that equity has cognizance to avoid multiplicity of suits. The liability of plaintiffs, if any, under the agreement of May 16, 1903, is several, not joint. Each is liable, if at all, only for commission on her share of the proceeds of sale. The defendant did not, in fact could not properly, sue thereon jointly. Nor can they jointly complain because of the several actions at law." The levy of attachments by several creditors (asserting separate claims) on the goods of a common debtor was held, in the case of *Zanhizer* v. *Hefner,* 47 W. Va. 418, not to be sufficient cause for awarding an injunction, at the instance of a third party claiming the goods, to enjoin the prosecution of the attachment proceedings in order to prevent a multiplicity of suits. JUDGE BRANNON, speaking for the court, said: "Jurisdiction cannot be rested on the theory of prevention of multiplicity of suits. The fact that four creditors sue their debtor on separate debts cannot give jurisdiction. There is no complication in such case though there may be some inconvenience; but it is not anything more than inconvenience of several trials, not inadequacy of the legal remedy. * * * In this case all are interested only in the question of title, not at all otherwise; and Pomeroy's Equity Jurisprudence, section 268, says that to give jurisdiction to prevent multiplicity of suits there must be a common right, and it is not enough that, the claims of each individual being separate and distinct, there is a community of interest merely in the question of law or fact involved, or in the kind or form of remedy demanded. In this case these creditors are all interested in the mere question of the right of property, but they have no common right, no connection with each other, and the judgment in one of

their suits has no legal effect upon the other. They are interested only in a question, not in result, as having the force of adjudication."

Having concluded that the case is not recognizable in equity, an order will be entered reversing the decree of the circuit court (which dismisses the bill on the merits), sustaining the demurrer to the bill and dismissing it for want of jurisdiction. The fact that the defendants are not now insisting on their demurrer does not affect the right and duty of this Court to act upon its own initiative in sustaining it and dismissing the bill for want of jurisdiction. If a bill does not state a case proper for relief in equity, the court should, *ex mero motu*, dismiss it. *Hudson* v. *Kline*, 9 Gratt. 379; *Berkeley* v. *Palmer*, 11 Gratt. 625; *Green* v. *Massie*, 21 Gratt. 356; *Morehead* v. *De Ford*, 6 W. Va. 316; *Cresap* v. *Kemble*, 26 W. Va. 603; *Willis* v. *Willis*, 42 W. Va. 522; *Thompson* v. *Adams*, 60 W. Va. 463.

*Bill dismissed.*