No. 32,304

J. T. ROBINSON, *Appellee*, v. W. S. BARRETT, *Appellant*.

(45 P. 2d 587)

 Opinion filed June
8, 1935. 

*Kenneth K. Cox,* of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker* and *Charles E. Jones,* all
of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to compel specific perform-
ance of a contract for the sale of an oil and gas lease which the de-
fendant agreed by written contract to purchase from the plaintiff for
a specific sum and plaintiff tendered an assignment of the lease,
which the defendant refused to accept for the reason that the title
thereto was not full, complete and merchantable.

The questions about the title involve the construction of a will
and the effect of a friendly proceeding in court. A copy of the will
and of all the court papers in that friendly case were attached to the
petition as exhibits. Defendant answered, putting in issue the con-
struction of the will and the effect of the court proceeding, and
thereafter both plaintiff and defendant separately moved for judg-
ment on the pleadings.

The trial court held in favor of the plaintiff, that the title to the
oil and gas lease was good and merchantable and ordered defendant
to comply with the terms of his contract of purchase, from which
order and judgment the defendant after the overruling of his motion
for a new trial took an appeal.

The plaintiff was the lessee in the lease he was contracting to as-
sign and sell to defendant. The makers of the lease to the plaintiff
derived their interests in the land in question from the deceased
owner thereof through a will. The particular tract of land on which
this lease was given had been devised to the daughter of the testator.
He left surviving him his widow, one daughter, Elizabeth, and one
son. The provisions of the will with which we shall be especially
concerned are as follows:

"Fourth: I will, devise and bequeath to my daughter, Elizabeth Barbee,
the following described lands situated in Pratt county, Kansas, to wit: (de-
scription of land).

"But my said daughter shall not receive any part of my estate, except at the
time and in the manner hereinafter provided.

"Fifth: Should either of my said children die, leaving no issue, before re-
ceiving any portion of my estate as herein designated, then and in that case I
will, devise and bequeath such portion so remaining to my surviving child.

"Seventh: I hereby nominate, constitute and appoint my wife, Jessie C. Barbee, O. H. Bock and Geo. W. Lemon, as executors of this my last will and testament and trustees of my estate to carry out the provisions of this will; and I request and direct that they be not required to give any bond.

"Eighth: I further will and direct that my said executors and trustees be not hampered and controlled in the management of my children's estate, by any court in which this will may be probated. My said executors and trustees, and the survivors or survivor, shall have executive control of the estate herein willed to my said children, until same is distributed as herein directed . . .

"Ninth: Placing absolute confidence in my said executors and trustees, I leave it to their good judgment as to how much of the income derived from the estate herein willed to them, shall be paid to my said children, either before or after they shall become of age, but no part of the principal of the estate willed to them, shall be received by them, except at the times hereinafter stated. .

"Tenth: As my said children each respectively shall arrive at the age of twenty-eight years, they shall receive the full estate herein willed to them, and any increase thereof remaining undistributed at that time."

The will was executed June 8, 1925, and the testator died June 4, 1926, and the will was duly admitted to probate October 14, 1926. The daughter at the time of her father's death was about sixteen years of age. At the time the lease was made she was twenty-four years of age, was married, but had no children. Her brother was married and was over twenty-eight years of age, and the widow of the testator was living.

On February 15, 1934, the three trustees named in the will, acting as trustees for Elizabeth, the daughter, and the daughter and her husband executed an oil and gas lease to the plaintiff. Thereafter the widow, as such, the three trustees as trustees for the estate of the deceased, and the son and his wife, by an instrument in writing confirmed, ratified and adopted as their own act the making, executing and delivering of the lease.

Later the brother brought an action in the district court of Pratt county against the three trustees under his father's will, his mother, the widow of the testator, his sister and her husband, and his own wife, setting up all the facts and praying for an order and decree of the court construing and interpreting the will of his father and for the appointment of a trustee for and on behalf of the unknown contingent executory devisees and contingent interest holders, with power and authority under order of the court to make and enter into an oil and gas lease, with power to receive and hold until further order of the court and happening of the contingencies men-

tioned in the will all the proceeds of such oil and gas lease or leases which may belong to the unknown contingent executory devisees and contingent interest holders, and for such further and different relief as to the court seems equitable and just. The defendants all entered voluntary appearance, and issues were joined by answer.

The court found the allegations of the plaintiff's petition to be true, including these about the prospect of oil and the danger of the oil being diminished or lost unless wells are drilled when others are being drilled in the immediate vicinity, and the court further found and held:

"The court further finds that by reason of the contingency herein above described as now existing, it is impossible to secure the development of said real property for oil and gas, and to protect the same from drainage unless the court exercises its equitable powers to protect the rights of such persons, born or unborn, who are or may be the unknown contingent executory devisees and/or unknown contingent interest holders of said real property under or by reason of the terms of the last will and testament of H. A. Barbee, deceased, all of which the court finds is necessary; that it is necessary that the court appoint a trustee with power in said trustee to either execute an oil and gas lease upon the lands hereinabove described separate and apart from the oil and gas leases heretofore executed, as aforesaid, or by joining in such leases covering and binding all of the interests in said lands, and that said trustee take, receive, and hold until the happening of the contingencies mentioned in said last will and testament all of the proceeds and benefits of and under said lease or leases accruing to such contingent executory devisees or interest holders. . . ."

The court appointed a trustee, who promptly made an appraisement and filed his report with the court, and the court approved his execution as trustee of the lease theretofore made to the plaintiff.

Appellant claims that an estate by implication was created in the event that the daughter should leave issue and be deceased before arriving at the age of twenty-eight years under the provisions of the will. Although inferred estates, or estates by implication, are not generally favored, especially in the absence of some direct or indirect expression of intention, yet it is not difficult to read the very evident intention and inference here in favor of creating an estate for such issue if such is left by her and she dies before reaching twenty-eight years of age.

We see two contingencies with reference to the property devised to the daughter which exist and will continue to exist during this four-year period before she reaches the age of twenty-eight years: First, whether or not she may have issue, and second, whether or

not she may live to become twenty-eight years of age. If she lives to the age of twenty-eight she takes the property regardless of issue. If she dies earlier, "leaving no issue," the property goes to her brother. If she leaves issue and dies before reaching twenty-eight years, of course the brother will not get the property and by the strongest kind of an inference the issue takes it under the will. What good reason could there have been in the mind of the testator that the son should not receive the property when the daughter might die leaving issue, unless it should be intended to go to that issue? The contrary intention cannot reasonably be supposed to have existed in the mind of the testator, as was said in 69 C. J. 69:

"In order to carry out the intention of a testator and prevent the will from failing of effect, a devise or bequest may be implied, although it has not been formally expressed in the will, unless the implication violates public policy or some settled rule of positive law. . . . In order that the devise or bequest may be effectual the implication must be a necessary one, that is, the probability of an intention to make the devise or bequest implied must appear from the will to be so strong that a contrary intention cannot reasonably be supposed to have existed in the testator's mind."

This unknown and contingent interest is what the appellant claims makes the lease unmerchantable, and further claims that the decree made and entered by the court of equity in the court action will not bind the unborn issue of the daughter Elizabeth.

Appellant cites the following four Kansas decisions: *Williams v. Bricker*, 83 Kan. 53, 109 Pac. 998; *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146; *Martin v. Lassen*, 122 Kan. 406, 251 Pac. 1083, and *Bell v. Watkins*, 90 Kan. 558, 135 Pac. 596.

The first concerned the extent of a contingency which might render a title unmerchantable, with very similar state of facts as in the case at bar, holding the title unmerchantable where the deed was made by the life tenant and all the children as remaindermen and one of the children died before the death of the life tenant, and the will also created a contingency by providing for the disposition of the property intended for any one of the children who might die without issue prior to the death of the life tenant.

The next two cases define contingent remainders and apply the facts therein to the recognized rule as to such. We are considering the case at bar as concerning a contingency—in fact, two contingencies, as above stated.

The Bell case was an appeal by wife and child of a son who were excluded as remaindermen in an earlier case reforming a deed, which

gave a life estate to the son with remainder to his heirs, and the court held they, being parties to the earlier action, were effectively bound by the earlier decree therein. It was further held that the rights of unborn heirs could not be adjudicated in that action because no party to the action had rights in common with the unborn heirs. This holding has not been reversed or modified in this state, and by adhering to it many decisions from other states, otherwise pertinent, will not be helpful here.

Some of the cases cited by appellant concern partition of property where an unborn child may have a contingent interest. That matter was most forcibly and conclusively handled and disposed of in this state in the case of *Bartram v. Kemp,* 113 Kan. 246, 214 Pac. 96. It was there held, following the earlier decision in the case of *Love v. Blauw,* 61 Kan. 496, 59 Pac. 1059, that—

". . . the district court has no jurisdiction in partition to limit the interests of the remaindermen to the tracts allotted to the life tenants by the voluntary partition." (Syl. ¶ 1.)

The case at bar is not in any sense a partition action or an attempt to divide the property. It is simply an equitable action to preserve the property from immediate loss and diminution, to be divided or distributed by order of court when the contingency shall have concluded. Such equitable procedure was recognized in the case of *Davis v. Davis,* 121 Kan. 312, 246 Pac. 982, although it was not the determining feature of the case because of the mistake of the one in possession in regarding the first estate as being one for life, whereas it was later learned to have been an estate tail. There the court in the exercise of its equity power to save for the unborn estates the possible interests in the oil and gas on account of certain activities in the demand for oil and gas leases in the neighborhood, appointed after a full investigation a trustee to execute an oil and gas lease for and on behalf of the unborn contingent remaindermen.

In 23 R. C. L. 584 it is said:

"In a suit in equity for partition, against trustees for an account, for the conversion of the realty into personalty, or any other proceeding whereby the jurisdiction of a court of equity may be invoked to dispose of real estate the title to which is embarrassed by contingent remainders awaiting unborn remaindermen, a decree may be rendered in a proper case, which will be binding upon the unborn ·persons in remainder. The doctrine of representation applies for reasons not only of convenience and justice, but of necessity, also, because it is impossible to make them personally parties. Necessity is recognized as an all-sufficient reason for it wherever such necessity exists. It

has·been held that a decree for the sale of the interests of contingent remaindermen may, within the doctrine of representation, be binding not only as to unborn remaindermen, but also as to those remaindermen whose names and residences are unknown."

Two recent cases recognize the urgency and necessity of immediate action between life tenants and remaindermen in oil and gas developments to avoid diminution and possibly complete loss. They are *Benson v. Nyman,* 136 Kan. 455, 16 P. 2d 963, and *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463.

In 21 C. J. 131 it is said that equitable relief as a ground of jurisdiction may be used—

". . . to protect the subject matter of a controversy where there is actual danger that it may be so dealt with as to prejudice plaintiff's rights. Instances of this preventive jurisdiction are found in the protection afforded to those holding remainders and other rights *in futuro* against loss or injury at the hands of one in possession."

In the case of *Mayall v. Mayall,* 63 Minn. 511, it was held:

"For the purpose of preserving a trust, a court has power to order a sale, mortgage, or lease of the trust property, although the trust instrument contains no power or authority for so doing, and to bind by its judgment parties not in being, who may thereafter become beneficiaries of the trust." (Syl. ¶ 1.)

In the case of *Trust Co. v. Nicholson,* 162 N. C. 257, it was held:

"Where the donor has created an estate in remainder for the benefit of his grandchildren, etc., to be held in trust until the youngest one shall have become 21 years of age, and it is made to appear to the court that to preserve the estate in its then condition, owing to changed conditions, would work a hardship upon the beneficiaries, and that to preserve their interest a sale should be decreed and the proceeds invested and held subject to the terms imposed: *Semble,* a court of equity may act accordingly, and the purchaser at the sale will acquire a good title." (Syl. ¶ 3.)

In the case of *Rasmusson v. Schmalenberger,* 60 N. D. 527, it was held:

"For the purpose of preserving the interests of beneficiaries in a trust estate, or the interests of remaindermen under a deed, a court of equity has power to order a sale of real property, although the instrument creating the interests of such beneficiaries or remaindermen contains no power or authority for so doing, and to bind by its judgment parties, not in being, who may thereafter become beneficiaries of the trust or remaindermen under the deed.

"A contingent interest in real estate is bound by judicial proceedings affecting the property where the court had before it all the parties that can be brought before it, and the court acts upon the property according to the rights that appear, without fraud. These powers are inherent in a court of equity, and rest· upon considerations of necessity and expediency." (Syl. ¶¶ 4, 5.)

(See, also, *Hale et al. v. Hale et al.,* 146 Ill. 227; *Gavin v. Curtis,* 171 Ill. 640; *Clyburn v. Reynolds,* 31 S. C. 91; and *Ridley v. Halliday,* 106 Tenn. 607.)

We conclude that the facts found by the court of equity in the special proceeding constituted sufficient grounds and reason for its decree and order appointing a trustee for the unknown or unborn contingent devisees or interest holders under the will, and that the court as a court of equity had jurisdiction and inherent power, based on considerations of necessity and expediency, to afford relief and protection to the unborn contingent devisees against loss and diminution of property, to the extent of authorizing and directing such trustee to execute an oil and gas lease and to hold and preserve the proceeds therefrom without distribution until the happening of the possible ·contingencies mentioned in the will and to the end of the period of contingency. Under these circumstances and the order made by the court of equity, the oil and gas lease in the case at bar so signed by the trustee, together with the other signers thereon, constitutes a good and merchantable title.

The judgment is affirmed.