No. 33,591

IRA A. WILSON et al., *Appellants*, v. EARL F. WAKEFIELD, *Appellee*.

(72 P. 2d 978)

Opinion filed November 6, 1937.

*W. E. Holmes, Mark H. Adams, Howard L. Baker, Charles E. Jones* and *Edward F. Arn,* all of Wichita, for the appellants.

*J. B. McKay,* of El Dorado, for the appellee.

The opinion of this court was delivered by

WEDELL, J.: This was a suit by the original lessors to cancel an unassigned portion of an oil and gas lease on the ground of alleged forfeiture, and was instituted under provisions of G. S. 1935, 55-201. Statutory damages in the sum of $100 and attorney fees were also sought under provisions of G. S. 1935, 55-202. This appeal is from a judgment sustaining a demurrer to the petition on the ground it did not state facts sufficient to constitute a cause of action.

We shall examine the material allegations of the petition. The sole question before us is whether the portion of the lease in question was forfeited. The petition in substance states: Plaintiffs were the owners of a quarter section of land in Cowley county, and on October 10, 1935, executed an oil and gas lease thereon; the south half of the quarter section was assigned by lessee to the Texas company on March 26, 1936; a dry hole was drilled and completed on

or about April 15, 1936, on the north half of the lease, the portion retained by defendant; the well was abandoned and this was the only test well drilled; no rental was paid in lieu of drilling operations on or before October 10, 1936, or at any other time; the only payment received by plaintiffs was the original consideration, down payment or bonus in the sum of one dollar recited in the first paragraph of the lease; the lease expired October 10, 1936; no drilling operations were being conducted on October 10, 1936, and the portion of the lease in question has been forfeited; on April 14, 1937, plaintiffs served on defendant a notice of cancellation and demanded a release, but defendant refused to execute the same.

The action was commenced on May 12, 1937. A copy of the lease was attached to the petition. For convenience we have numbered paragraphs or parts thereof relied upon by the parties as determinative of the question presented. They read:

1. "WITNESSETH, That the said lessor, for and in consideration of one & no/100 dollars, cash in hand paid, receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, has granted, demised, leased and let . . .

2. "It is agreed that this lease shall remain in force for a term of five years from date, and as long thereafter as oil or gas or either of them is produced from said land by the lessee.

3. "If no well be commenced on said land on or before the 10th day of October, 1936, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the State Bank at Winfield, Kan., or its successor or successors, or any bank with which it may be merged or consolidated, or which succeeds to its business or assets, or any part thereof by purchase or otherwise, which shall continue as the depository regardless of changes in the ownership of said land, the sum of one hundred and sixty dollars, which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred.

4. "Should the first well drilled on the above-described land be a dry hole, then, and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And

it is agreed upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments.

5. "If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

Counsel for the respective parties advise they have been unable to find decisions in point from this or other jurisdictions. Our limited time for research has disclosed none, and we shall be obliged to construe the contract without the aid of precedent.

We think paragraph five is not germane to the question of forfeiture under facts in the instant case. The primary term of this lease was five years. Paragraph five appears to have been intended to grant to a lessee the right to complete a well with reasonable diligence which had been commenced during the primary term or an extension thereof and with the result that if oil or gas was produced in paying quantities the lease should remain in force as effectively as though the well had been completed during the primary term. The well in the instant case was not only commenced but completed during the first year of the primary term and thus paragraph five does not assist in the solution of the problem before us.

For convenience and clarity we shall refer to plaintiffs or appellants as lessors, and to defendant or appellee, as lessee.

Lessors contend paragraph four is not applicable. They insist the provisions of paragraph three are applicable and compel a forfeiture. They direct our attention to the rule that oil and gas leases are strictly construed against the lessee, and in support thereof cite 40 C. J., Mines and Minerals, § 667; *Habermel v. Mong,* 31 F. 2d 822; *Solberg v. Sunburst Oil & Gas Co.,* 76 Mont. 254, 246 Pac. 168, and *McKinley v. Feagins,* 82 Okla. 193, 198 Pac. 997, 998.

The rule of strict construction, however, does not supersede the rule which requires interpretation in accordance with the reasonable intendment of the parties, if such intendment can be ascertained from the four corners of the contract. It does not permit us to do violence to a written contract by excision of words deliberately placed therein by the parties. We cannot assume that unambiguous portions of language employed are meaningless or that the parties

did not understand their plain import. Lessors' contention, simply stated, is that since no delay rental, as distinguished from bonus money, was paid on or before October 10, 1936, the lease had terminated and all rights thereunder were forfeited. We are unable to agree with that contention. It completely ignores the plain provision in paragraph three, relied upon by lessees concerning the commencement of a well within the first year. To ignore important provisions of a contract constitutes not construction, but excision. Certainly the provision for the commencement of a well within the first year was of vital importance to lessors, as well as to lessee. Production and diligent operation are ordinarily prime objectives in the granting of oil and gas leases. If production is found in paying quantities the royalties ordinarily far exceed the delay rental. On the other hand, the expense to lessee of completing a well obviously far exceeded the delay rental. It must thus be assumed the provision concerning drilling within the first year constituted an important consideration in the lease contract. In other words, the intention was that drilling should be commenced within the first year, but that if it was not, then the lessee should be obliged to pay for the privilege of such delay. We can therefore not ignore the drilling provision in paragraph three. Lessors read that paragraph as though it provided only that the lease should terminate unless a delay rental was paid on October 10, 1936. It does not so read. That paragraph provides in substance, *that if no well be commenced within the first year* then the lease shall terminate unless the delay rental be paid on or before October 10, 1936. The reasonable inference must be that the provision for the commencement of a well within the first year had some significance. What was that significance? It must have been intended the lease should not terminate on October 10, 1936, unless no well was commenced within the first year *and* the delay rental was not paid on or before October 10, 1936. In other words, it appears to have been intended the lease should not terminate on October 10, 1936, unless lessee failed in both of the contingencies mentioned. Unless the contract is so construed the provision concerning the commencement of a well within the first year becomes utterly meaningless. It follows the fair intendment was that if no well was commenced within the first year then a delay rental became due on October 10, 1936. In the instant case a well having been not only commenced but completed within the first year, we conclude no delay rental payment was intended

on or before October 10, 1936, and that it did not become due until October 10, 1937.

We approach the problem from another angle. The consideration mentioned in paragraph one relieved lessee of doing anything prior to October 10, 1936. Had he not drilled during the first year he would have been obliged to pay a "delay rental" not later than October 10, 1936, in order to keep the lease alive. What is a "delay rental"? In paragraph three of the lease it is defined as, *"The privilege of deferring the commencement of a well for twelve months from said date."* The date referred to is October 10, 1936. The lessee, however, not only had commenced a well, but had completed the well during the first year. Then what occasion was there for him to pay for the privilege of deferring the commencement of the first well which he had already completed? Obviously none.

Lessors remind us that in an "unless" lease, where the lessee had permitted the lease to expire by failure to drill within the time specified, the lessee will not be held liable for delay rentals for the reason the lease had terminated. Such decisions are not authority for a decree of forfeiture where the lessee had not permitted the lease to terminate by failure to drill, but, on the contrary, had kept it alive by drilling.

From what has been said it follows that under the provisions of paragraph three the lease was not forfeited and lessors were not entitled to a decree of cancellation.

We have thus far considered all provisions of the lease contract relied upon by each of the parties except paragraph four. As previously stated, lessors contend it is not applicable. The contention is based on the view that the "rental period" therein mentioned does not pertain to the first year of the lease. The thought is that the first year is an "option period" supported by the bonus or down payment mentioned in paragraph one and not a "rental period" as that term is used in the lease contract. In view of the facts before us in the instant case, we need not pursue that contention. It is sufficient to say that paragraph four is not inconsistent with the views herein expressed. The trial court properly sustained the demurrer to appellants' petition, and the judgment is affirmed.