No. 34,369

STANLEY E. STADY, *Appellee,* v. THE TEXAS COMPANY, *Appellant.*

(94 P. 2d 322)

Opinion
filed October 7, 1939.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellant.

*D. A. Hindman,* of Stockton, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to cancel a regular producer's oil and gas lease, commonly known as an "unless lease," for failure to pay the annual delay rentals and for damages under the provisions of G. S. 1935, 55-202, for failure to release. Judgment went for plaintiff, and defendant appeals.

The parties stipulated as to the amount of damages in the event cancellation was decreed. The court made findings of fact and conclusions of law. The findings were:

"1. On December 18, 1933, F. W. Splitter was the owner, among other properties, of the real estate described as the east half (E½) of the northeast quarter (NE¼) of section thirty-three (33), township ten (10) south, range seventeen (17) west, Rooks county, Kansas, and that on that date he executed an oil and gas lease which by assignment became the property of the Texas Company on March 23, 1936.

"2. That on February 2, 1935, F W. Splitter signed an instrument which provided for the conveyance of one-fourth of the minerals under the real estate above described to the Skaer Oil Company. This instrument was taken to the Plainville State Bank by one A. M. Jennings. It was left with the cashier of the bank, who took the grantor's acknowledgment. The instrument remained at the bank until sometime in February, 1936, when A. M. Jennings obtained it from the bank and placed it of record on March 14, 1936. The instrument was not listed for taxation prior to March 1, 1936.

"3, F. W. Splitter died February 3, 1936, and George L. Bement was appointed administrator of his estate. The application for his appointment recites that so far as the petitioner knew, F. W. Splitter left no last will and testament, lists certain known relatives, and recites that there are some other relatives whose names are unknown, but whose names and ages will be later furnished to the court. This was never done as far as the record discloses. Bement died May 2, 1936, and the plaintiff, Stanley E. Stady, was appointed administrator *de bonis non* and continued to act in such capacity until the time of his final discharge on November 18, 1937.

"4. On October 19, 1936, the defendant wrote George L. Bement, requesting that he furnish proof of death and heirship of F. W. Splitter, deceased, and asked specifically for a certified copy of the final decree of distribution, if that had been entered, so that payment of delay rentals under the lease could be made. A form of proof of death and heirship was enclosed. The plaintiff

Stady answered this letter on November 7, advised the defendant of the death of Bement and of his appointment as administrator *de bonis non,* stated that as a relative he could make affidavit of the date of the death of F. W. Splitter, the names of the heirs, and the appointment of administrator, but added:

" '. . . it is my information that a suit to establish the contents of a lost will will in all probability be commenced, and I have some information of the existence of the lost will. I cannot, therefore, make an affidavit that no will exists.'

"And, also:

" '. . . I might inquire if it is not possible for you to pay the rentals to the depository designated in the lease, for the bank to hold until the ownership is established, or to me as an officer of the court.'

"The defendant company wrote the plaintiff Stady on November 30 that under the circumstances stated by him they could not pay the delay rentals to the heirs at law; that the Codell State Bank, the depository named in the lease, was no longer open for business, and then stated:

" '. . . we will appreciate it if you will advise us just as soon as it has been determined who are the heirs or beneficiaries of F. W. Splitter, deceased, in order that we may pay the delay rental as soon as it is determined who is entitled to such rental.'

"In December, 1936, the defendant paid one-fourth of the delay rental to the Skaer Oil Company and its assignees on the mineral interests referred to in the second finding of fact.

"5. On February 2, 1937, an application was filed in the probate court of Rooks county, Kansas, to probate the last will of F. W. Splitter. The will was admitted to probate on February 17, 1937, and the plaintiff Stady under the terms of said will became the owner of the property in question. There was an appeal to the district court and the case was pending there without hearing until November 6, 1937, when the same was dismissed by the appellants.

"6. There was no correspondence or negotiations between the plaintiff and the defendant in the period between November 30, 1936, and November 8, 1937. On the latter date the plaintiff wrote the defendant, advised that he inherited the real estate in question, and demanded a release because of the failure of the defendant to pay the rentals. The defendant answered on November 13, advising the plaintiff that delayed rentals had been paid on the mineral rights, and that, if the litigation had been settled over the ownership of the land, if a certified copy of the decree was furnished to it, it would have the same examined and make prompt payment of the delay rental. Stady answered on November 19, again demanding a release of the lease. On November 7, 1937, Mr. Witt, representing the Texas Company, made a tender to Mr. Stady of sixty ($60) dollars, being three-fourths of the delay rentals for the years 1936 and 1937. This was refused by Stady, who again demanded a release of the lease.

"7. The plaintiff assumed to act on behalf of the estate or beneficiaries under the will of F. W. Splitter, deceased, knew that the defendant was withholding payment of the delay rentals until it could be definitely ascertained who succeeded to the title of Splitter, and did not prior to his letter of Novem-

ber 8, 1937, furnish defendant with any evidence or information which advised the defendant of the successor in title to the property in question; nor did he prior to that time make any demand for payment of the delay rentals or for cancellation of the lease either on his own behalf or on behalf of anyone else.

"8. That on the 12th day of October, 1937, the Producers Oil Company and/or J. C. Trigg commenced the drilling of an oil and gas test well on the southwest quarter (SW¼) of the east half (E½) of the southwest quarter (SW¼) of section twenty-three (23), township ten (10) south, range seventeen (17) west, Rooks county, Kansas, and continued the drilling of said well until the 22d day of December, 1937, at which time it was completed as a dry hole, this test well being within one-half mile of the land covered by the aforesaid lease.

"9. On November 8, 1937, the plaintiff filed an action in Rooks county, Kansas, to quiet the title to the land in question, making the Skaer Oil Company, and its assigns, and others, parties defendant. Since the well in the area had proven dry, the royalty owners had directed their attorneys to abandon the defense of the case, but at the time of the trial the action was undisposed of, as far as the records were concerned.

"10. Had the Texas Company released the lease upon Stady's demand, he could have and would have sold the lease for a total of $800.

"The present action was instituted in March, 1938, and seeks a cancellation of the lease, $1,600 damages, statutory damages of $100, and a reasonable attorney's fee. By answer the Texas Company made tender of any sum due to the plaintiff upon the interest of the plaintiff in said lease. By reply the plaintiff alleged the tender made on December 7, 1937, was insufficient and that by making the tender the defendant had waived the right to insist upon proof of ownership before payment.

"11. The lease in question was the usual producer's and contained the following stipulation: 'If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to the heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment or a true copy thereof.'"

The conclusions of law were:

"1. The provision in the lease that an assignment of the ownership of the land would not be binding upon the lessee until it had been furnished with a written transfer or assignment or a true copy thereof, nor the failure or receivership of the depository bank named in said lease, did not relieve the defendant from payment of the rentals, but, at most, only relieved it from paying said rentals to the assignee until such information was furnished. If the lessee desired to retain the lease, it was necessary that the rental be paid. It could not sit idly by for a period of two years or as many years as was necessary to a final determination of the heirship in the Splitter estate. It is true the depository named in the instrument was defunct and the legal heirs were undetermined. This did not prevent the defendant from having a new de-

pository named by a court of equity and making the payment of rentals, if it desired to keep the lease alive.

"2. Having reached this conclusion, it is unnecessary to make any finding with reference to whether a sufficient amount was tendered to the plaintiff.

"3. The plaintiff is entitled to recover from the defendant the stipulated actual damages of eight hundred ($800) dollars, one hundred ($100) dollars statutory damages, and a reasonable attorney's fee of two hundred ($200) dollars."

While defendant requested certain additional findings of fact, it now concedes the findings made were sufficient. It insists, however, the findings made require judgment in its favor.

The lease contract provided:

"If no well be commenced on said land on or before the 18th day of December, 1934, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the Codell State Bank at Codell, Kan., or its successors, which shall continue as the depository *regardless of changes in the ownership of said land,* the sum of (fifty cents) per acre, which sum shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively." (Our italics.)

Under the terms of the "unless lease" defendant was, of course, not obliged to pay the delay rentals on December 18, 1936, the date they were due. It had the option to pay the rentals or to permit the lease to terminate in accordance with the terms of the lease contract. It is true forfeitures are abhorred by the law, but, strictly speaking, the question here involved is really not one of forfeiting some established right or interest which defendant had acquired by the expenditure of money in development of the lease, but rather a question whether defendant had failed to protect his contractual right to delay drilling. In other words, it was a question whether defendant had permitted the lease to expire by failure to comply with its terms. (*Gasaway v. Teichgraeber,* 107 Kan. 340, 191 Pac. 282.)

The Codell State Bank was designated the depository for payment of delay rentals to the credit of the lessor, and under the terms of the lease that bank continued to be the designated depository regardless of changes in the ownership of the land. Did the fact the designated depository became defunct relieve a lessee or assignee from making the rental payments and thus continue the lease in force without such payment? The lease contract did not provide

that a promise in good faith to pay after December 18, 1936, would keep the lease alive. It required actual payment or the contractual tender of payment. It was defendant's duty to pay the rentals, and not the landowner's duty to collect them. The fact that the depository was defunct, and that all the heirs were not known, did not prevent defendant from placing itself in such unequivocal position, as to rental payments, as would bind it to pay them and would make them available to those entitled to receive them. That defendant did not do. Manifestly it could not keep the lease alive by assuming a position which would not bind it to pay the rentals and which would not effectually make the rentals available to those entitled thereto. It is true the will, by which title to the land was devised to plaintiff, was not probated until February 17, 1937. The landowner, however, had died February 3, 1936, and the rental was not due until December 18, 1936. Defendant knew definitely, at least as early as November 7, 1936, that the ownership of the land was in doubt. Some of the heirs resided in the county in which the land was situated. They were subject to personal service in any action which might have been instituted by defendant for the purpose of protecting its rights under the lease. That a court of equity is vested with full power and authority to appoint a trustee to accept and to hold the rental payments for the benefit of such person or persons as ultimately should be decreed to be entitled thereto, cannot be doubted. Nor is there any valid reason why a court of equity itself could not have accepted such deposit of rentals for the benefit of those entitled thereto. Courts of equity are especially designed to meet exigencies arising from unexpected and unusual situations and are vested with power to adequately protect the interests of all concerned under the existing circumstances. In 21 C. J., Equity, § 13, the rule is stated thus:

"The absence of precedents, or novelty in incident, presents no obstacle to the exercise of the jurisdiction of a court of equity. It is the distinguishing feature of equity jurisdiction that it will apply settled rules to unusual conditions and mold its decrees so as to do equity between the parties."

In *Robinson v. Barrett,* 142 Kan. 68, 45 P. 2d 587, it was held:

"In an action to enforce specific performance of a contract to purchase an oil and gas lease, where the owner of the land by will devised it to his daughter, to be received by her when she arrived at twenty-eight years of age, and if she died before reaching that age 'leaving no issue' it should go to her brother, she being at the time of the trial married, twenty-four years of age and having no issue, it is held: (1) that an inferred estate was created for

such issue in the event the daughter should die before reaching the age of twenty-eight years leaving issue; and further held (2) that the oil and gas lease signed by a trustee for such unborn devisees by direction of a court of equity under the facts and circumstances set out in this opinion conveys such contingent estate and makes the title of the lease merchantable." (Syl.)

Defendant contends a decree of a court of equity appointing a trustee to accept and to hold the rental payment would not have been binding upon all the heirs, as those residing in Germany could not have been served by publication service within time, assuming that publication service would have been valid in the instant case. The contention cannot be sustained. Manifestly, no service could have been had on the unborn and unknown devisees in the Robinson case, but that fact did not invalidate the decree which authorized the trustee, appointed by the court for such unborn devisees, to sign the lease. A decree appointing a trustee to receive rentals for the benefit of those entitled thereto would have been binding upon the heirs, in the event no will had been found, under the doctrine of representation. (21 C. J., Equity, § 284.) The doctrine of representation is applicable to unknown persons where they belong to a class and all have similar rights and where some of such class are actually before the court so that the interest is adequately represented. (21 C. J., Equity, § 295.) The doctrine is applicable to such parties where they are beyond the jurisdiction of the court. (21 C. J., Equity, § 296.) See, also, *Robinson v. Barrett*, supra, 73-75, where the rule and the basis therefor is clearly stated. Obviously, it could not be contended with merit by any heir or devisee, after payment by defendant in accordance with such a decree, that the lease had terminated for nonpayment of rentals.

Defendant directs our attention to the provisions of the lease contained in finding number eleven. It is urged under that provision defendant was under no duty to pay the rentals until it had been furnished with authentic information as to the change of land ownership. We think that provision was intended to protect the lessee where he has paid rentals to the lessor in the absence of the specified notice of a transfer or assignment. In other words, in the absence of such notice, a transfer or assignment is not binding on the lessee and upon payment to the lessor the lessee will not be subjected to double liability. When so interpreted that provision harmonizes with the former lease provision heretofore discussed which authorizes the deposit of rentals to the credit of the lessor, regardless of change in the ownership of the land. Courts are, of

course, required to harmonize contractual provisions when reasonably possible to do so. On the other hand, if defendant's interpretation of the provision relied upon by it should be sustained, then a lessee would be permitted to prevent the expiration of an "unless lease," contrary to its terms, without the payment of rentals to any one and without the lessee placing himself in an irrevocable position concerning their payment. A reasonable interpretation of the various lease provisions will not permit that result. Moreover, provisions of oil and gas leases, in the event of ambiguity, are ordinarily construed most strongly against the lessee and in favor of the lessor, and not against him and in favor of the lessee, as in the case of other leases. (40 C. J., Mines and Minerals, § 667; *Wilson v. Wakefield,* 146 Kan. 693, 695, 72 P. 2d 978.)

Plaintiff insists various other contentions now advanced by defendant were not urged in the court below. That may be true. We note, however, that plaintiff also urges this court to decide issues not decided below. In view of the fact the trial court ruled only upon the questions whether defendant could have made effectual payment of delay rentals and should have done so, we need not discuss other contentions than those heretofore treated.

The judgment is affirmed.

ALLEN J., concurs in the result.