**HARREL et al.**

v.

**ATLANTIC REFINING CO.**

Civ. A. No. 3765.

United States District Court
E. D. Oklahoma.
July 22, 1954.

James F. Bennett, Duncan, Okl., for plaintiff.

Villard Martin and Garrett Logan, Tulsa, Okl., for defendant.

WALLACE, District Judge.

The plaintiffs, E. O. Harrel, C. F. Rudder, and W. H. Rudder, instituted this action against the defendant, The Atlantic Refining Company, a corporation, to gain a declaration of forfeiture of an oil and gas lease previously executed by the plaintiffs and to recover damages for defendant's failure to release the property in question. The defendant oil company has moved for summary judgment and urges that the plaintiff's pleadings show the instant action to be premature.

Plaintiffs allege in substance that on June 15, 1950, they executed and delivered to one Warren Shear, an oil and gas lease on certain land located in Stephens County, Oklahoma, who subsequently assigned this lease to the defendant. The portions of the lease pertinent to the present controversy provide:

"If no well be commenced on said land on or before the 15th day of June 1951, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the First State Bank at Elmore City, Oklahoma or its successors * * * the sum of Seven and 50/100 Dollars, which shall operate as rental and cover the privilege of deferring the commencement of a well for twelve months from said date. * * * In like manner and upon like payments or tenders the commencement of a well may be further deferred for periods of the same number of months successively. * * *

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. * * *"

Plaintiffs further allege that all delay rentals up to and including June 15, 1952, were paid; that in August, 1952, a test well was drilled for oil and/or gas and soon thereafter abandoned as a dry hole; that inasmuch as no delay rental was paid between June 15, 1952, and June 15, 1953, the lease terminated on June 15, 1953.

Plaintiffs assert that even though a test well was drilled by the defendant in August of 1952, it was incumbent on the defendant to pay delay rentals prior to June 15, 1953, in order to keep the lease in effect. Such an interpretation appears to be contrary to the express wording of the lease provision which

states, "Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within the twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate * * * ". In order to ascribe any meaning to this just-quoted provision it must be construed as furnishing an alternative to the lessee insofar as drilling the first well is concerned; that is, an alternative of either drilling such test well or paying the delay rental payment. Admittedly, the dry hole drilled by the defendant in August of 1952 was the first well drilled on the leased land and the "expiration of the last rental period for which rental has been paid" fell on June 15, 1953. Thus, the defendant had twelve months from such expiration to either drill a second well or *resume* delay rental payments. Naturally, if the drilling of the first well did not take the place of a delay rental payment, it would be nonsensical to provide in the lease that if a second well was not drilled within twelve months from the expiration date of the last rental payment that the delay rental payment should be resumed. There can be no resumption unless prior thereto a delay rental payment had been excused; and, the express wording makes it abundantly clear that the twelve months grace earned by the lessee in drilling the first well was to be counted from the time the last paid rental expired, that is, June 15, 1953.

The Kansas Court in Wilson v. Wakefield [1] made this same application in construing a lease which contained provisions almost identical to the ones under consideration. In pointing up the reasonableness of such interpretation, an application in conformity with the lessor's desire to contract to encourage the development of the land, the Court observed:

"* * * Certainly the provision for the commencement of a well within the first year was of vital importance to lessors, as well as to lessee. Production and diligent operation are ordinarily prime objectives in the granting of oil and gas leases. If production is found in paying quantities, the royalties ordinarily far exceed the delay rental. On the other hand, the expense to lessee of completing a well obviously far exceeded the delay rental. * * * "

Although the completed dry hole in the Wilson case, supra, occurred during the first twelve months of the life of the lease, the Court's reasoning therein applies with equal or more force to the facts in the instant case. The lessors in the Wilson case contracted to accept a test well, even though a dry hole, in the place of a delay rental payment in order to get a well drilled on the land. Likewise, in the instant case the lessee having drilled this first well was under no compulsion to pay delay rental for the twelve months succeeding the last paid up delay rental period.[2]

Inasmuch as the instant lessee had twelve months from June 15, 1953, the expiration date of the last rental payment, to either drill a second well or resume rental payments to defer further

---

1. 1937, 146 Kan. 693, 72 P.2d 978, 980.

2. As observed in the Wilson case, footnote 1, supra, 72 P.2d at page 980: "We approach the problem from another angle. The consideration mentioned in paragraph 1 relieved lessee of doing anything prior to October 10, 1936. Had he not drilled during the first year he would have been obliged to pay a 'delay rental' not later than October 10, 1936, in order to keep the lease alive. What is a 'delay rental'? In paragraph 3 of the lease it is defined as 'The privilege of deferring the commencement of a well for twelve months from said date.' The date referred to is October 10, 1936. The lessee, however, not only had commenced a well but had completed the well during the first year. Then what occasion was there for him to pay for the privilege of deferring the commencement of the first well which he had already completed? Obviously none."

drilling, this action was filed prematurely.

Counsel should submit a journal entry which conforms with this opinion within 15 days.