# CHARLESTON.

C. W. MOORE *v.* W. J. HAMILTON, *etc.*

Submitted March 27, 1923.   Decided April 10, 1923.

1. INJUNCTION—*Trial at Law not Enjoined, Where Defendant can Plead Adequate Defense.*

   A defendant in an action at law who has a defense thereto which can be fully pleaded and proved in that forum, cannot maintain an injunction suit in order to formulate and assert his defense in a court of equity. (p. 535).

2. REFORMATION OF INSTRUMENTS—*Equity Should not Entertain Bill for Reformation, the True Purpose Being to Obtain Construction of Contract for Defense in Law Action.*

   A court of equity should not entertain a bill brought nominally for the reformation of a contract on the ground of mutual mistake, when it is apparent that the true purpose is to obtain a judicial construction thereof for defense in a pending action at law. (p. 535).

3. INJUNCTION—*Demurrer to Bill Seeking to Enjoin Law Action on Ground That Contract be Reformed Should be Sustained.*

   Where the plaintiff in an injunction bill avers that a suit in assumpsit is pending against him arising out of contract between himself and defendant, the meaning and legal effect of which contract is construed differently by each party; and if susceptible of the construction placed upon it by his opponent, then the contract is asked to be reformed on the ground of mutual mistake, so as to express the true intention of the parties as contended for by plaintiff; and seeks to enjoin the action at law until that can be done, a demurrer to the bill should be sustained for want of equity jurisdiction. (p. 535).

Appeal from Circuit Court, Kanawha County.

Suit by C. W. Moore against W. J. Hamilton. From a decree for plaintiff, defendant appeals.

*Reversed and remanded.*

*Morton, Mohler & Peters* for appellant.

*Poffenbarger, Blue & Dayton* and *Harry V. Campbell* for appellee.

LIVELY, JUDGE:

The decree appealed from, entered June 5, 1922, construes a contract between the parties dated the 11th day of December, 1917, holding that the same was an assignment to W. J. Hamilton by C. W. Moore of his right, title and interest to mine the coal under two small tracts of land described in the bill; and that the assignment is without covenants of title, and so intended by the parties thereto. It further decrees that the contract does not support the allegations of the declaration in a law action instituted by Hamilton against C. W. Moore, the plaintiff in this suit, and perpetually enjoins and inhibits Hamilton from prosecuting that action at law.

The bill filed by Moore charges that he had certain rights and interests in the leasehold estate in two small tracts of land near the town of London in Kanawha county, one of which the Alberta Perkins tract contains 11.4 acres, and the other the R. G. Saunders tract 18.6 acres. The title papers, agreements and assignments by which he owned the right to mine the coal in these two tracts is set out. The plaintiff says that defendant, Hamilton, approached him for the purpose of purchasing all his right, title and interest in the leasehold estate consisting of right to mine and remove the coal from the two tracts, and he agreed to sell the same to Hamilton for $7,400, $2,500 of which was to be paid in cash and the remainder in deferred payments extending over a period of four months. In pursuance of this contract of sale and purchase an instrument of writing was entered into, dated the 11th day of December, 1917, which plaintiff says was represented by Hamilton to embody the agreement of sale and that he signed the same under that belief, which writing was acknowledged by him and duly recorded. The bill further charges, upon information and belief, that Hamilton claims that said writing of December 11, 1917, was in fact a deed and such conveyed to him, Hamilton, an absolute fee-simple estate in the coal underlying the two tracts and that he assumed no obligation for the performance of the conditions, terms and agreements of the several leases, verbal and writ-

ten, by which plaintiff obtained from the land owners the right to mine the coal. Plaintiff charges that the said agreement as written does not admit of the construction placed thereon by Hamilton; "that if said agreement, as written, admits of such construction and interpretation it is contrary to the intent and agreement of this plaintiff and said defendant W. J. Hamilton, when said agreement was made and executed and is a mistake and said written agreement should be reformed by the elimination of the words therein which admit of such construction as that claimed by said defendant, and words substituted therein, to express the true intent and agreement of the parties thereto." The bill further charges that Hamilton took possession of the property and mined the ·coal for a period of about a year, after which he abandoned it; that Hamilton has instituted an action at law against the plaintiff for the recovery of $10,000 damages in the circuit court of Kanawha county, basing said damages upon the said agreement, and that unless Hamilton is restrained from prosecuting said action at law it will result in irreparable injury to the plaintiff, and that Hamilton will introduce in the trial of said cause, as evidence, the said agreement, which, by mutual mistake, does not express the true intent and meaning that was in the minds of both parties when it was written. The bill further says: "This plaintiff is advised that if this court should be of the opinion that the ·agreement executed by this plaintiff on December 11, 1917, by reason of a mutual mistake, does not express the true intent and meaning that was in the minds of both the parties when it was written then a court of equity will correct and reform the said contract so as to make it conform to and express the meaning that was intended by the parties at the time it was executed, and it is for the purpose of bringing about such a correction and reformation of said agreement that plaintiff brings this suit." The prayer is for a reformation and correction of the agreement and for perpetual injunction against the prosecution of the suit. The prayer for reformation and correction is to make the agreement "conform to and express the meaning that was intended by

the parties at the time it was executed and to vest in said defendant only the rights which this plaintiff had to mine and remove the coal under said land, subject to performance of the conditions and agreements of the verbal and written leases, giving this plaintiff the right to so mine and remove said coal,'' and for general relief.

Hamilton demurred to and answered the bill. The demurrer was overruled, and the parties went to proof. The evidence relates to the negotiations of the parties which culminated in the agreement of December 11, 1917, and tends to show that the agreement was prepared by G. P. Stewart, an attorney representing Moore, and in the presence of Moore and T. W. Woodward, the latter representing Hamilton at the time, Hamilton having left for Columbus, Ohio, after having agreed with Moore upon the terms. The closing up of the agreement and turning over the cash payment of $2,500, together with the deferred purchase money notes, was left by him with Woodward.

Upon these pleadings and evidence the court decreed, as above stated, that the true construction of the agreement was that it was an assignment by Moore of his right, title and interest to mine the coal subject to all the terms and conditions mentioned and contained therein as described by Moore's title papers and written memoranda referred to in the agreement.

The agreement, which is the basis of this litigation, is rather uncertain and indefinite in its character. For a consideration of $1.00 paid by Hamilton to Moore and of the covenants and agreements thereinafter mentioned, Moore does ''hereby grant and lease unto Hamilton, for the purpose and with the exclusive right of entering, operating, and mining all the coal found in, under and upon all that certain tract or tracts of land situate in the county of Kanawha, State of West Virginia, and in the District of Cabin Creek, at London, and described as follows: being all the coal leased to and assigned to C. W. Moore by contract dated July 23, 1917, from W. G. Moore, Gus Conley and Everett Conley to Milton Larch and assigned by Milton Larch to said first party herein, on

lands of C. P. Perkins; and also contract dated July 18, 1917, from Joe Wehrle, Jr., to said first party herein, being interest in coal business from R. G. Saunders and C. P. Perkins to said Joe Wehrle, Jr., and all rights of way over the lands of C. P. Huntington to haul coal of R. G. Saunders to the railroad; and also contract dated May 22, 1917, from W. A. Alexander to said first party on property of R. G. Saunders and C. P. Perkins, conveying cars, mine mules, tipples, etc. on said property; and also contract from C. P. Perkins, Gus and Everett Conley, dated April 3, 1917, leasing a certain portion of coal property lying on the left side of the entry which William Alexander is using on date of said contract; and also a right of way over certain lots which Moore is now using in connection with the mining of the coal for which he is paying $350 a year during the life of the contract and the operating and putting out of the coal obtained by virtue of the contract''; then the paper gives to Hamilton all the rights needful, useful in mining, operating and putting out coal as mentioned and set out in Moore's contracts, leases and assignments mentioned, with the privilege of erecting tipples, tramroads, buildings and other structures necessary for the operation and output of the coal. The rent of $350 for the use of barn and two adjoining lots which Moore was paying at the time of the contract is to be assumed by Hamilton and to be paid in monthly installments.

What does this agreement mean? What property passed between the parties by virtue thereof? The construction of this contract is the bone of contention. Moore says that it means, (as it was intended and agreed), that he transferred and sold to Hamilton only his right, title and interest in his leasehold estate on the two tracts; and that by an inspection of the contracts and assignments mentioned in the agreement with Saunders, Perkins, Alexander, Conley, Wehrle and others, it is clearly shown that he had only a right to mine the coal upon a royalty basis of 15 cents per ton; on the contrary, Hamilton, according to the bill, seems to interpret the agreement as meaning that he had purchased from Moore the coal in place. On the face of the paper we find no limitation of time for taking out the coal. It will be noted that

the words "grant and lease" are used in the beginning of the contract. As before suggested, the writing is ambiguous and uncertain, and being so, extrinsic evidence could be introduced to ascertain the true intent and meaning. The situation of the parties, the subject matter of the contract, acts done under it by the parties, the surrounding circumstances when it was made, all would be proper evidence to be considered in its interpretation. The contracts and assignments and the like, which are enumerated in the contract and by which Moore claimed his right to the subject matter would be proper evidence to assist in construing the paper. No particular word or phrase is conclusive. The whole agreement taken up by its four corners, together with extrinsic evidence, should be considered, and when that is done the true intent and meaning can be ascertained, and as its true intent and meaning can and should be determined in this manner there is no reason for its reformation. The court, by its decree, has said so. It seems that the court, aided by the evidence, had little trouble in ascertaining what the parties meant by the contract. Upon a consideration of a demurrer to the bill, it is difficult to come to the conclusion that the bill is purely for a reformation of the contract. It does not allege in what particular the intent of the parties is not expressed; nor does it say what should be inserted therein to express that intent. The bill charges that the true intent and meaning of the writing is that Moore sold to Hamilton for a stated consideration all his, Moore's right, title and interest in and to the operation of the leases, written and verbal, which he had upon the coal; it charges that the agreement as written does not admit of the construction placed thereon by Hamilton; but that if the paper does admit of such construction then it should be reformed. If the paper be construed as plaintiff contends, then he is satisfied; but if it should be construed as defendant contends, then he asks for a reformation. It seems that plaintiff was uncertain as to what construction the court would give to the agreement in the law action and out of abundance of precaution has instituted this injunction suit to ascertain what the court would decide in advance.

Does equity have jurisdiction for such purpose? This is the question raised by the demurrer.

It is well settled that equity will not restrain an action at law where the controversy is to be decided by the court of equity upon a ground which is equally available in the law court, unless there is some special equitable feature or ground of relief in favor of the party seeking the injunction. 4 Pom. Eq. sec. 1361. ''Where a court of law can do as full justice to the subject in dispute as can be done in equity, this court will not interfere to stay the proceeding at law. *Southampton Dock Co.* v. *Southampton Harbor and Pier Board*, 11 L. A. Eq. (Eng.) 254; *Hurvitz* v. *Lopinsky*, 92 W. Va. 21, 114 S. E. 439. Likewise, a court of equity has no jurisdiction to relieve a plaintiff against a judgment at law, where the case in equity proceeds upon a ground which was equally available at law and in equity, unless the plaintiff can establish some special equitable ground for relief. 2 Myle & K. (Eng.) 423. It is apparent from an inspection of the contract of December 11, 1917, that a court of law could ascertain and determine its meaning as well as a court of equity. The ambiguity is patent on its face, and the extrinsic evidence to assist in its interpretation could as well be introduced and considered in a court of law as in equity. But it is argued that this suit is brought for the purpose of reforming the contract, and equity having taken jurisdiction to reform, and finding no reason for reformation would retain the case for the purpose of construing the contract and ending the litigation. But, can we say that the bill is for the purpose of reforming the contract? The bill charges that the contract is not susceptible of the interpretation put upon it by defendant Hamilton. It says that the true meaning thereof, which was the true intent of the parties, is that Moore sold to Hamilton his right, title and interest in the coal operation as shown by his title papers and assignments mentioned in the contract itself. Then the bill says if that construction be wrong, and the writing is susceptible of the interpretation placed upon it by Hamilton, it ought to be reformed, so as to show the true intent. This is nothing more than an attempt to have the court of equity interpret the writing. ''Equity will not take cognizance of an action brought nomi-

nally to reform an instrument, but really to obtain a judicial construction, which will make its meaning certain.'' *Husted* v. *Van Ness et al.,* 1 App. Div. Repts. N. Y. 120; affirmed in 158 N. Y. Repts. 104. In that case the plaintiff brought his action in equity to obtain relief in respect to a certain paper writing, a release, which Van Ness, attorney for Cruikshank, the then trustee of the Lord estate, prepared and procured the plaintiff to execute in his office. The plaintiff was of the opinion that the release was not sufficiently explicit and that it did not point out definitely that plaintiff was not attempting to release the interest he had assigned to another person some time before, and therefore might embarrass his assignee when he came to collect of the trustee the other undivided one-half assigned to him. He alleged the procurement of the release was by fraud, and the court entertained the bill, but it appears there was no evidence of fraud and that charge was abandoned. The lower court said that the plaintiff was entitled to relief in respect to the release by the reformation thereof, so that it should read and be construed as being a release of but one-half of the one-eleventh share of the Lord estate; this holding of the trial court was reversed by the appellate division, and the reversal affirmed by the supreme court. The supreme court held that the judgment construing the instrument was erroneous, because that was not the substantial purpose of the action; and the main purpose having failed, the plaintiff was not entitled to a judicial construction of the release, holding that as originally drawn its meaning is precisely the same as it would have been had it been reformed. That is substantially what was done in the case at bar. The court took jurisdiction ostensibly for the purpose of reforming the paper writing of December 11, 1917, but instead of reforming it, found that its proper construction and meaning was that claimed for it by the plaintiff. We think the allegations for reformation and the prayer of the bill based thereon are simply colorable, the true purpose of the bill seeking for a construction of the contract instead of a reformation. In *Oakville Co.* v. *Double-Pointed Tack Co.,* 105 N. Y. 658, the action was to reform a contract on the alleged ground of mistake, and the proof failed to show the alleged mistake, but the trial court placed a judicial

construction upon the contract. The supreme court reversed the holding, saying that the construction of the contract was purely a legal question and did not belong to the suit in equity, but should be determined in an action at law. The language of the New York supreme court is peculiarly applicable to the case at bar, and is as follows: ''But plaintiff seeks to raise a further question over the construction of the contract as originally drawn and insists that its true meaning is precisely what it would have been if the instrument had been reformed in accordance with the prayer of the complaint. That is a purely legal question which does not belong to the equitable action before us. It will arise, if at all, when one party sues the other for royalties claimed to be due, and may then be determined properly and correctly and with an effective result. The remedy at law is obvious and adequate and no ground exists for the interposition of equity.'' See also *Electric Goods Mfg. Co.* v. *Kiltonski,* 171 Fed. 550. As above suggested, the bill does not show in what particular the agreement does not express the true intent and meaning or wherein it should be reformed by striking out any particular paragraph or sentence or modifying and correcting the same. In *Grubb's appeal,* 90 Penn. St. Repts. 228, the bill charged, among other things, that the defendant was attempting to take all of certain ores by virtue of a deed when as a matter of fact the deed properly construed would only give the defendant one-half, and the bill charged that if the words of the deed did not clearly confine the defendant's right to a supply of one-half of ores, then the deed should be reformed. The court denied jurisdiction in equity, and said in reference to this allegation of the bill: ''It is sufficient to say in regard to this that the proper construction of the deed is not a subject of equity jurisdiction, and that as to its reformation there is neither proper averment nor proof of fraud, accident or mistake.''

We are of opinion that the demurrer to the bill should have been sustained. The decree will be reversed, and the cause remanded.

*Reversed and remanded.*