## No. 16,091.

HILL ET AL. *v.* STANOLIND OIL AND GAS COMPANY ET AL.

(205 P. [2d] 643)

Decided March 28, 1949.

Mr. RICHARD DOWNING, Messrs. SENIOR & SENIOR, Messrs. McKAY, BURTON & WHITE, Messrs. HUGHES & DORSEY, Mr. THOMAS KEELY, Mr. E. G. KNOWLES, Messrs. BROCK, AKOLT & CAMPBELL, for plaintiffs in error.

Mr. JOHN R. MORAN, Mr. ALLYN COLE, Mr. CARLTON R. WINN, Mr. LON SAILERS, Mr. DONALD CAMPBELL, Mr. L. A. THOMPSON, Messrs. TURNER, RODGERS, WINN & SCURLOCK, for defendants in error.

*En Banc.*

Mr. Justice Stone delivered the opinion of the court.

This case involves the construction of an oil and gas lease. The record discloses that on August 31, 1943, Ernest Oldland gave lease on customary producer's 88 form, dated that day, to Joe T. Juhan. The recited cash consideration was $10.00, which was paid. The lease was for a term of five years, on customary one-eighth royalty, and provided that if no well was commenced on or before the 31st day of October, 1943, the lease should terminate unless lessee should pay to the lessor or to the lessor's credit in the First National Bank at Meeker, Colorado, the sum of $320.00 which should operate as rental and cover the privilege of deferring the commencement of the well for twelve months from said date. Prior to the 31st day of October, Juhan asked for further time in which to start the well and Oldland consented. Juhan then negotiated with plaintiff in error Hill, and with Hill's assistance contracted with other parties for drilling a well, which was spudded in about the 14th of December. In connection with his assistance, Juhan testified that Hill requested that a lease be put in his name, and on the 24th day of December, at the request of Juhan, Oldland executed a new lease, on like printed form as the former lease, to Charles S. Hill, bearing the same date of the 31st of August 1943, but showing date of signature as the 24th day of December, 1943. This lease extended for the same term of five years, but provided for the commencement of the first well on or before the first day of January, 1944, instead of the 31st day of October, 1943, and provided that the payment of the $320.00 should "operate as a rental and cover the privilege of deferring the commencement of a well for ......... months from said date," instead of twelve months, as in the former lease. Upon the signing of this new lease, the former, which had not been recorded, was destroyed, and the latter placed of record. No further cash payment was made, although the new lease, like

the old, recited payment of $10.00. The paragraphs of this lease, with which we are here concerned, read as follows:

"If no well be commenced on said land on or before the 1st day of January, 1944, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's credit in the First National Bank of Meeker or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of three hundred twenty dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for ........ months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period aforesaid, and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided that the last preceding paragraph hereof, governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

The litigation here involved arose from the omission of any figure in the printed blank where provision is

made for the term of months for which the cash payment should operate as a rental and cover the privilege of deferring the commencement of a well.

The well which had been commenced on December 14, 1943, and before the actual signing of the lease to Hill, was drilled to a depth in excess of 1500 feet, as was contemplated between the parties, and was abandoned as a dry hole about the first of August, 1944.

Under date of October 19, 1944, the lease, insofar as it covered a parcel of 53.3 acres, was assigned to Wichita River Oil Company and Aro Equipment Corporation, with reservation of certain production therefrom to Joseph E. Pepper and I. L. Quiat.

Under date of December 12, 1944, Harold D. Roberts, an attorney of the firm of Dines, Dines & Holme, of Denver, who represented Wichita River Oil Company and Aro Equipment Corporation, wrote Oldland in part as follows:

"Dear Mr. Oldland:

"At the request of Mr. Charles S. Hill and other parties who are interested in the lease on your land, dated August 31, 1943, described in the enclosed receipt, I hand you Mr. Hill's check for $212.00 and Mr. Martin's check for $108.00 in payment of the rental installment which becomes due January 1, 1945. This covers the privilege of deferring commencement of a well for the twelve months beginning January 1, 1945. A form of receipt is enclosed which I wish you would sign and return to me for the parties interested."

Thereafter Oldland replied, calling attention to the fact that by error there had been included in the lease forty acres which he did not own, and suggesting that Hill release the oil lease and a new one be prepared containing the correct acreage and legal description. Then, under date of December 27, 1944, Attorney Richard Downing wrote Mr. Oldland as follows:

"My dear Mr. Oldland:

"Mr. Harold Roberts, of Dines, Dines and Holme, discussed with me your letter to him of Dec. 18th concerning the 40 acres that some way had gotten into the description of the lease you gave my client, Charles S. Hill.

"I think it is perfectly proper and indeed only right, to release you from any obligation under this 40 acre tract. * * *.

"In this connection I notice that in the same original oil and gas lease the payment of $320.00 delay rental shall 'operate as a rental and cover the privilege of deferring the commencement of a well for ........ months from said date.' There is no question but what the numeral 12 should have been inserted. Of course the original lease cannot be changed without your express approval and even then it may be necessary to re-record the same. However I notice that the abstract entry seems to be as complete as though the '12' had been written in. I wonder therefore if I could get you to look at Book 98, page 353 and see whether this blank appears on the original record or not. If it is blank on the original record it might be a good idea to ask Mr. Morlan if he would be willing to insert the number 12 if it were inserted with your express authority in the original recorded document."

Under date of December 29, Oldland replied to Downing, expressing concern that under the corrected description he was only leasing 155.95 acres and was being paid for 160 acres at $2.00 per acre, then concluding:

"In regard, the paragraph that you speak of, covering the delayed rental clause, I inspected the record at the court house and the way they have it recorded, there is no room left in the record to insert 12 months; in fact the typing is close up with no space left on the record for insertion, but there is a small pen mark above the regular typing indicating that that portion was left blank in the original instrument.

"Of course, I'm not seeking to take any advantage of this omission of the 12 months; I talked to Joe [Juhan] about this part of it and he assured me that 12 months is proper and it was his intention to have the 12 months therein, and of course, I am very agreeable with whatever is correct under the circumstances."

Under date of January 5, 1945, Roberts wrote Oldland reciting that Downing had given him copy of Oldland's letter of December 29, and stating that the giving of a new lease with corrected description could not be worked out easily for the reason that the lease had been assigned to the extent of some fifty-three acres and the assignments were of record; that he thought the correction instrument which had been mailed by Mr. Downing corrected the matter of description; he further said, "the correction of the lease to show that each rental payment extends the drilling privilege twelve months cannot be handled as easily as Mr. Downing had suggested." The letter concluded: "To clear up the question of rentals for at least this present year, I wish you would sign and send to me a rental receipt. I sent you suggested forms with my letter of December 12th. I think your only objection to these was that the erroneous description of the original lease was repeated. I have rewritten this form of receipt, and enclose three copies as revised with this letter."

Joseph L. Martin testified that he represented Wichita River Oil Company and Aro Equipment Corporation; that Harold D. Roberts, in examining title to fifty-three acres of the Oldland tract, was attorney for those companies; that in December 1944 when Martin gave Roberts a check for $108.00 payable to Oldland, Roberts said that the lease provided that drilling or rental were required on a twelve-month basis; that it was upon this basis that he left the $108.00 check with him.

On January 6, 1945, Oldland wrote Dines, Dines and Holme, attention Mr. Harold D. Roberts, advising that he had accepted the $320.00 rental tendered by Charles

S. Hill and Wichita River Oil Company and returned therewith "two signed copies of the receipt prepared by you indicating the $320. paid." This letter ended with the following paragraph: "When Mr. Downing or you come over some time we will visit the County Clerk and Recorder's office and see what can be done about making the record straight in regard the twelve months deferment which was over-looked in the first instance. However it would appear that this receipt will cover the year 1945 at any rate."

The receipt for rental payment so referred to, prepared by Attorney Roberts and signed by Oldland, read as follows, excluding the description of the property:

"Meeker, Colorado,
"320.00                    December 29, 1944.
"Received of Wichita River Oil Company, check for One Hundred Eight Dollars ($108.00), and of Charles S. Hill check for Two Hundred Twelve Dollars ($212.00), being the delayed rental in full for twelve months from January 1, 1945, to January 1, 1946, under Oil and Gas Lease which undersigned executed to Charles S. Hill on August 31, 1943, upon the following described property in Rio Blanco County, Colorado, to-wit:

*      *      *

"All of the above premises containing 155.95 acres, more or less.

"Ernest Oldland"

As hereinabove noted, during 1944 the lease as to part of the lands covered by it had been assigned to Wichita River Oil Company and Aro Equipment Corporation. During the year 1945, the lease as to the remaining acreage was assigned in varying instruments to Wasatch Oil Refining Company, W. L. W. Royalty Corporation, and Idaho Refining Company, and under date of February 27, 1946, an interest therein was assigned to Sharples Corporation.

No second well was commenced on any part of the

leased land and no rental payment made during the year 1945. On January 7, 1946, attorneys for Wasatch, Sharples and Idaho tendered to the lessor $320.00 in cash, which was refused by him, and under date of February 6, 1946, for a consideration of $160,000.00, lessor executed quitclaim deed to the leased premises to Stanolind Oil and Gas Company, which was placed of record on that day.

In June 1946, plaintiffs in error as claimants under said oil and gas lease brought action seeking declaratory judgment as to rights under the lease, with determination that said lease was in full force and that plaintiffs were entitled to exercise all the rights thereunder as their interests appear, superior to any right of defendant Stanolind Oil and Gas Company; with further prayer, that defendants claiming adversely be enjoined from interfering with plaintiffs in the exercise of their rights under said lease; that plaintiffs' title thereunder be quieted and that if the court should find any payment due under said lease as rental for the year 1946, the payment in December 1944, be applied in equity by the court as in payment thereof. Defendant Stanolind Oil and Gas Company by answer challenged plaintiffs' asserted rights and by counterclaim joined in plaintiffs' request for declaratory judgment, praying that it be declared owner of the oil, gas and other minerals in and under the lands described in plaintiffs' complaint, together with an easement for the development and removal thereof. On trial of the case the rights of defendants Tyson Dines and Argo Oil Corporation were admitted, and as against the other parties here appearing the issues were found in favor of defendant Stanolind Oil and Gas Company, with resultant decree that said company had title to the minerals in and under the lands described in said lease and that plaintiffs and the aligned defendants Joseph E. Pepper and I. L. Quiat had no right, title or interest therein.

It is first urged by plaintiffs in error that the trial court erred in finding that the lease from Oldland to Hill terminated on January 1, 1946, in that the language of said lease is plain and unambiguous; that it is a lease for the full term of five years, without obligation on the part of the lessees for drilling or the payment of rent, and still in force, and that the trial court erred in admitting evidence dehors for the purpose of its construction.

The argument on this point is in substance that the five-year primary term of the lease must be effective unless that term is shortened by some other positive, definite and controlling provision therein; that the only provisions which could limit that term are those contained in the "unless" paragraph or the "dry-hole" paragraph; that the "unless" paragraph was not operative for the reason that its condition had been fully met by the commencement of a well and hence the alternative payment of $320.00 was not required nor expected; that the "dry-hole" clause required, in the event the first well was a dry hole, that a second well be commenced or payments resumed "within twelve months from the expiration of the last rental period which rental has been paid"; that the rental for the period commencing January 1, 1944, had been paid by the performance of the condition which the lease substituted for cash payment, to wit, the commencement of a well; that such period being for "........ months" was indefinite and hence limited only by the five-year primary term of the lease. It is further urged that since a well had been commenced before the execution of the lease, the very provision in the "unless" clause for the commencement of a well or payment of rental was surplusage, and the instrument was not in fact an "unless" lease.

██ ██ In other words, it is contended that as a result of the commencement of the well prior to the actual signing of the lease, and of one blank being left

unfilled in the lease, both the "unless" paragraph and the "dry-hole" paragraph are inoperative and should be rejected as surplus, and that without those paragraphs it became a lease for a straight five-year term without obligation for either payment of rental or commencement of a well.

We cannot agree with this contention. Its fundamental error consists in the assertion that the rental for the period commencing January 1, 1944, had been paid by the performance of the condition "which the lease had substituted for cash payment," to wit, the commencement of a well. The commencement of a well was not a substitute for the cash payment of so-called rental. The "rental" provided for in the lease is not rental in the true sense of the word. Rental is compensation for the use of land. The term as here used was compensation or penalty for delay in its use and development while the lessee was not even in possession of the land. *Concord Oil & Gas Co. v. Thompson,* 248 Mich. 230, 226 N. W. 857. A "rental period" was an agreed period of delay. The commencement of a well was not payment for a further period of delay; on the contrary, it marked the end of such delay. It marked the taking of possession and the carrying out of the purpose of the lease. The initial $10.00 payment recited in the lease was consideration for delay in the commencement of a well until January 1, 1944. That date marked the expiration of the rental period, which rental had been paid.

■ ■ Furthermore, on its face the lease is incomplete. Whether the parties intended to insert some number in the blank space or whether they intended to strike out two full paragraphs with resultant change in the whole nature of the instrument does not appear from a study of the lease itself. If the former was the intent, why was the figure omitted from the term?; if the latter, why were all the other blanks—the date of

commencement of a well, the name of the bank in which payment should be made, and the amount of the rental payment—filled in; and why were those important paragraphs not visibly deleted? It is a cardinal rule that a contract must be construed as a whole and effect given, if possible, to its every provision, and from the face of the lease here in question there is certainly no stronger presumption of intent to delete the two most vital paragraphs than of oversight in not filling in the length of the intended term. As it is written, the lease cannot be construed with certainty.

Under such circumstances, it is necessary to resort to evidence aliunde and construe the lease in the light of all the attendant facts and circumstances of its execution and performance for the purpose of learning if possible the intent of the parties. Therefore the trial court did not err in receiving parole testimony and other evidence to that end. The very argument of plaintiffs in error, that the commencement of a well prior to the execution of the lease changed its nature from an "unless" lease to one of full term, is based on such evidence outside the instrument itself.

From the evidence properly received by the trial court it appears, and the court found, that the deferment period in the Hill lease was intended to be 12 months but that by oversight of the scrivener the figure 12, which had been inserted in the former lease, was omitted from the rental period in the "unless" paragraph of the new lease. It further appears from this evidence, and the court found, that after discovery by the parties that the term to be covered by the delay rental had been omitted in the lease, the lessees prepared and submitted to the lessor, and the latter signed, a receipt for rental paid wherein it was recited that the rental covered "the delayed rental in full for twelve months from January 1, 1945, to January 1, 1946, under Oil and Gas Lease which undersigned executed to

Charles S. Hill on August 31, 1943," and that thereby the parties agreed upon an interpretation and construction of the lease and that by such interpretation and agreement the parties themselves completed the lease.

Among the rules for construction of a lease are the following: That it should be construed if possible so as to give effect to every provision contained in it; that it should be so construed as best to promote production, development and progress (*Parish Fork Oil Co. v. Bridgewater Gas Co.*, 51 W. Va. 583, 42 S. E. 655); that it should be construed in favor of the lessor and against the lessee; that, when contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound (*Lewis v. Grininger*, 198 Okla. 419, 179 P. (2d) 463); that doubt as to its meaning should be resolved against the one who prepared it; that the express intent of the parties is controlling and that where the parties themselves have placed a construction upon a lease and have acted upon this interpretation, such construction will be adopted by the courts (*Associated Oil Co. v. Rector*, 97 Colo. 387, 50 P. (2d) 551). The application of each of these rules leads to the same result,—a conclusion that the intent of the makers of the lease was not to delete two vital paragraphs therefrom, but to supply the figure 12 in the blank space provided therein for the term to be covered by payment of delay rental.

*Riddle v. Keechi Oil & Gas Co.*, 74 Okla. 73, 176 Pac. 737, is urged as authority that a provision in the lease is of no effect where a blank is left therein. But there the court said: "There is no contention here that the amount was left blank by mistake or fraud, * * *." Here there is contention of mistake and ample proof thereof. *Kent v. Ryan* (Tex. Civ. App.), 20 S. W. (2d) 1099, reviewed in *Ryan v. Kent*, 36 S. W. (2d) 1007, is urged as authority for deleting the two paragraphs from the lease, but in that case none of the blanks in those

paragraphs was filled in, and there the court received testimony as to a prior lease and all the circumstances surrounding the transaction and determined therefrom that the new lease was accepted by all the parties in lieu of, and as a complete substitute for, the old one, specifically saying (36 S. W. [2d] at page 1010) that, "In ascertaining whether the parties to this contract intended that the lease should be continued by production from wells producing oil at the time it was executed, we may look to the surrounding circumstances when the contract was entered into, the situation of the parties, and the subject matter of the instrument," and from such evidence the court determined that "It is manifest, we think, that the execution of the second lease was for the sole purpose of modifying the royalty provision." In *Erie Crawford Oil Co. v. Meeks,* 40 Ind. App. 156, 81 N. E. 518, the lease provided, "In case no well is completed in ........ years from date of lease, then the grant shall become null and void, unless the Woodbury Glass Company shall pay to Meeks, at Parker Bank, fifty cents per acre, payable semiannually, in advance, $........ for each year thereafter such completion is delayed." And it was there held that it was proper for the court by extrinsic evidence to be placed as near as possible in the position the parties occupied at the time the lease was executed for the purpose of construing their intent. In *N. E. D. Holding Co., Inc. v. McKinley,* 246 N. Y. 40, 157 N. E. 923, there was involved the construction of a memorandum contract for sale of real estate where the amount of the purchase-money mortgage agreed on and the term thereof were left blank. The court said, speaking through Cardozo, C. J., "Much is made by the defendants of the fact that the memorandum is written upon a stereotyped form which leaves a blank for the amount of a purchase-money mortgage. Since the blank was not filled, it may be rejected as surplusage *if the parties so intended.*"

(Italics supplied). Both in principle and on authority, then, the trial court in the instant case was justified in receiving evidence dehors and in construing the contract as requiring insertion of the figure 12 in the blank space in the lease.

It is urged that in so doing the trial court made a new contract between the parties. Making a new contract infers the existence of an old and different one. Here, the court made no new contract, but only construed from proper evidence, and the application of proper rules, the meaning and intent of the contract executed by the parties themselves.

It is next urged that evidence aliunde as to intent or as to construction by the parties is not admissible as to certain of plaintiffs who, it is said, are assignees for value and without notice. Such argument can be based only on the assumption that the lease was plain, essentially complete and unambiguous on its face. "It is the duty of the purchaser to examine the records and whether he performs this duty or not, notice will be imputed to him of every fact which an examination of the records would disclose. * * * Even [if] through the fault of the abstractor a purchaser has no actual knowledge of a judgment, yet if it is of record, he is charged with notice of it." 2 Devlin on Real Estate (3d ed.), p. 1143, §629a. "The assignee of an oil and gas lease * * * cannot be an innocent purchaser for value without notice as to the provisions of the lease itself." 3 Summers Oil and Gas (Permanent ed.), p. 289, §551. "An assignee of an oil and gas lease cannot, of course, claim to be an innocent purchaser for value, if he has constructive notice of prior claims and equities, actual or imputed notice thereof, or such information respecting the state of the title as would cause a reasonably prudent man to make diligent inquiry." 3 Summers Oil and Gas (Permanent ed.), p. 290, §551. In the present case, the assignees, taking with knowledge of the instrument

as it appeared on the record, took with knowledge of the unfilled blank in the term, and such knowledge was properly held by the trial court to have put them on inquiry with reference thereto. *Bradford v. Carpenter,* 13 Colo. 30, 21 Pac. 908; *Perkins v. Adams,* 16 Colo. App. 96, 63 Pac. 792; *Charles v. Roxana Petroleum Corporation,* 282 Fed. 983. Being put on inquiry by the unfilled blank in the instrument as to a term which might and did become essential, the most casual inquiry, either from their assignor or the lessor, would have elicited information advising the assignees at the time of their purchase, of the intent and the agreement regarding the omitted term. They are not innocent holders.

It is next urged that the court may not reform an instrument and then apply its provisions to create a termination or forfeiture retroactively, especially as against innocent purchasers. In this action the parties joined in prayer for a declaratory judgment determining and defining the interests of all parties under the lease. Defendant Stanolind specifically alleged that the lessees construed the "........ months" period in the lease to mean twelve months and were estopped from asserting otherwise. The issues thereby raised included the construction of the lease. If the relief sought required reformation, the objection would not be valid. "Where circumstances justify reformation of a writing, affecting the contractual relations of the parties to the writing, a court may in its discretion without a preliminary decree of reformation give effect to the transaction as if it had been reformed." Restatement of the Law—Contracts, §507; *Hornick v. Union P. R. R. Co.,* 85 Kan. 568, 118 Pac. 60. This is true even in an action at law. "In jurisdictions under the reformed procedure, or in jurisdictions in which the distinctions between law and equity are abolished, or in which both forms of relief are administered by the same court, in an action at law upon an instrument the court may in a proper case

construe the contract as it was intended by the parties, or supply matters omitted either by mutual mistake or fraud, and render a proper judgment on the basis thereof, just as if there had been first a reformation of the contract. The judgment may confer only the final legal remedy, the preliminary equitable relief being assumed as a prerequisite, but not in terms awarded." 45 Am. Jur., p. 589, §11. However, it is not necessary here to rely on right of reformation. The determination by the court in this case was not based on a reformation of the lease to make it speak other than it appeared to speak before, as was the case in *Sonora Oil & Gas Co. v. Harris,* 194 Ky. 734, 240 S. W. 382, but rather a construction of the instrument to determine what was intended as it was written. *Moore v. Hamilton,* 93 W. Va. 529, 117 S. E. 229; *Husted v. Van Ness,* 1 App. Div. 120 (N. Y.). Since the judgment is based on construction rather than on reformation, it may be granted against innocent purchasers as well as the original lessee.

It is urged that "the rental payment made in December, 1944, when no payment was due, and under mistake, could not constitute a 'construction' binding on plaintiffs or estop plaintiffs." The lease being incomplete on its face as to payment of rental, and that provision having become essential, construction thereof by the court was necessary. Voluntary payment of rental is convincing evidence that rental was believed to be due. As was said in a similar situation: "Nothing to the contrary appearing, it may be presumed that men of ordinary or extraordinary business capacity pay their obligations when due, and, assuming that the business of appellant was being conducted upon business principles and according to the usual and ordinary business methods, we may assume that the payments thus made were on account of some liability then due growing out of the transaction covered by the lease." *Erie Crawford Oil Co. v. Meeks,* 40 Ind. App. 156, 81 N. E. 518.

Even if we assume that plaintiffs, experienced oil men as they were, failed to inspect the title records and were not aware of the blank in the lease at the time they made the rental payment, their correspondence shows that they had become aware of the unfilled blank in the term clause before the payment was accepted, and that they thereafter sent a modified form of receipt to be signed by the lessor in acknowledgment of payment. Moreover, it is not the payment alone which constituted their construction of the lease, but the written statements of lessees' attorneys to lessor that, "There is no question but what the numeral 12 should have been inserted"; and that "the correction of the lease to show that each rental payment extends the drilling privilege twelve months cannot be handled as easily as Mr. Downing had suggested," and the recital of the payment in the receipt required of lessor after full knowledge of the blank in the lease, as "being the delayed rental in full for twelve months from January 1, 1945, to January 1, 1946." This was not a modification, as urged by plaintiff in error, but a necessary completion and construction of the contract.

Again it is urged that no rental was due when payment was made in December of 1944, even if the lease should be considered as having "12" inserted in the blank term; that the rental paid in December, 1944, was not then due and should, in equity, be held to have satisfied the obligation to pay in December 1945, when it was due. In support of this contention it is insisted that the commencement of the well in December 1943 and its completion in August 1944, "paid the rent for the entire year of 1944," and the requirement of the lease then became, that a new well be commenced or rental payments resumed within twelve months from the expiration of the last rental period, which rental had been paid; that such period expired December 31, 1944, and twelve months from the expiration of that

period would be December 31, 1945. This is but stating in different words the theory of interpretation of the lease first urged. Again we say, that the commencing of a well was not the payment of delay money nor a substitute for it; that the original $10.00 payment was compensation for delay in drilling until the first day of January, 1944, which date marked the expiration of the last rental period, which rental had been paid; that the drilling of the dry hole extended the time for commencement of a second well or rental payment for twelve months from that date, or until January 1, 1945, and that the payment made in December 1944 was then due. The terms of the lease seem to us to bear that plain interpretation. If, in fact, they are ambiguous, the payment of rental by lessees as "in full for twelve months from January 1, 1945, to January 1, 1946," and the acceptance thereof by lessor constituted an agreed construction by the parties which is binding upon them and their assigns. *Wilson v. Wakefield,* 146 Kan. 693, 72 P. (2d) 978, is cited as supporting the interpretation of plaintiffs in error. We do not so understand it. The similar lease there involved was dated October 10, 1935, and provided for termination if no well was commenced or rental paid on or before October 10, 1936. A well was commenced before that date and was a dry hole. Interpreting that lease as we have the one before us, there the initial payment was consideration for delay in commencement of a well until October 10, 1936. The dry hole extended the time for commencement of a second well twelve months from that date, or until October 10, 1937, and the court found that the delay rental payment did not become due until October 10, 1937.

Finally it is urged that it is more consonant with equity to deny than to grant a forfeiture. Unfortunately for plaintiffs in error, notwithstanding some occasional loose language on the part of the courts, there

is no forfeiture here involved. "Under the terms of the 'unless lease' defendant was, of course, not obliged to pay the delay rentals on December 18, 1936, the date they were due. It had the option to pay the rentals or to permit the lease to terminate in accordance with the terms of the lease contract. It is true forfeitures are abhorred by the law, but strictly speaking, the question here involved is really not one of forfeiting some established right or interest which defendant had acquired by the expenditure of money in development of the lease, but rather a question whether defendant had failed to protect his contractual right to delay drilling. In other words, it was a question whether defendant had permitted the lease to expire by failure to comply with its terms. (*Gasaway v. Teichgraeber*, 107 Kan. 340, 191 P. 282)." *Stady v. Texas Co.*, 150 Kan. 420, 94 P. (2d) 322; see, also, *Steffes v. Allen*, 295 Mich. 510, 295 N. W. 245; *Humble Oil & Refining Co. v. Harrison*, 146 Tex. 216, 205 S. W. (2d) 355; and 2 Summers Oil and Gas (Permanent ed.), p. 212, §337. We have here involved no question of excusable mistake or other ground of equitable intervention, as in *Browning v. Weaver*, 158 Kan. 255, 146 P. (2d) 390, or *Oldfield v. Gypsy Oil & Gas Co.*, 123 Okla. 293, 253 Pac. 298, but merely of failure to make payment on time, as in *National Refining Co. v. Wagner*, 169 F. (2d) 43.

Accordingly, the judgment of the trial court is affirmed.