**AMERICAN CASUALTY COMPANY
and Columbia Casualty Company,
Plaintiffs,**

v.

**James R. GLASKIN, et al., Defendants.**

**Civ. A. No. 92–B–683.**

United States District Court,
D. Colorado.

Oct. 20, 1992.

---

Jack W. Berryhill, Berryhill, Cage & North, P.C., Denver, Colo.; and Chris Ballentine and Kristy C. Brown, Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, Fla., for plaintiffs.

John M. Kobayashi, Diane Vaksdal Smith, Kobayashi & Associates, P.C.; Kathie J. Fliss, Kathie J. Fliss, P.C.; and Jonathan K. Cook, Denver, Colo., for RTC.

Miles C. Cortez, Jr., Julie M. Williamson, and Frederick G. Garger, Cortez Friedman & Coombe, P.C., Denver, Colo., for Lee, Martin, Peterson, Retherford and Webster.

Jon B. Clarke, Clarke & Waggener, P.C., Englewood, Colo., for Palsmeier.

Paul E. Goodspeed, G. Stephen Long, and Joseph S. Berman, Coghill & Goodspeed, P.C., Denver, Colo., for Haskins.

James R. Glaskin, Union Plaza Associates, Colorado Springs, Colo., defendant pro se.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs move to dismiss several counter-claims asserted by the various defendants as well as certain claims for damages and attorney fees, and demand for jury trial. Jurisdiction is based on diversity and the presence of a federal agency, the Resolution Trust Corporation, as a party. 28 U.S.C. §§ 1331 and 1332 and 12 U.S.C. § 1819(b)(1) and (2)(A). Colorado law controls resolution of the motion.

The issues are adequately briefed and oral argument will not materially aid their resolution. Because defendants fail to state a claim for breach of fiduciary duty, all counter-claims for breach of fiduciary duty are dismissed. Further, RTC has not stated a claim for third-party beneficiary breach of contract and, therefore, plaintiffs' motion to dismiss is granted as to that claim. Next, in accordance with Colorado law, all claims for punitive damages related to any counter-claim sounding in contract or equity are dismissed. Defendants are not entitled to a jury trial on their constructive non-renewal counter-claim and those demands are stricken. In all other respects, plaintiffs' motion is denied.

This declaratory judgment action arises out of a series of directors' and officers' liability insurance policies written by plaintiffs between 1985 and 1989. Defendants James R. Glaskin, James H. Palsmeier, and Thomas H. Haskins all served as either directors or officers of the First Federal Savings & Loan Association of Colorado Springs (First Federal). Defendants Harry L. Lee, Jr., William T. Martin, Carl B. Peterson, Jr., Jerry A. Retherford, and Charles R. Webster all served as outside directors of First Federal. Defendant Resolution Trust Corporation (RTC) was appointed receiver for First Federal in June, 1990.

In March, 1992, RTC filed suit in U.S. District Court for the District of Colorado against these former directors and officers alleging negligence and breach of fiduciary duties in connection with certain loans made by First Federal between 1983 and 1988. Plaintiffs then filed this separate action seeking a declaration that they are not liable on the claims asserted by RTC in the underlying action.

Plaintiffs initially insured all directors and officers of First Federal in 1985 for a one year term, with First Federal paying the premium. The policy covered First Federal's directors and officers for any claim they might become legally obligated to pay based upon a wrongful act committed within the scope of their official duties. The policy also provided indemnity coverage for First Federal itself. In 1986, First Federal renewed this policy on behalf of itself and its directors and officers for another one year term. However, the renewal policy excluded from coverage any action brought by RTC against the insureds. The renewal policy also excluded from coverage any action by one insured against another. First Federal renewed this policy, with the exclusions, for one year terms again in 1987, 1988, and 1989.

All defendants here have counter-claimed, alleging that plaintiffs did not provide required notice of the reduced coverage. Relying on the doctrine of constructive non-renewal, defendants claim they are entitled to the broader coverage provided by the 1985 policy. *See, GEICO v. United States,* 400 F.2d 172 (10th Cir.1968). All defendants also counter-claim for breach of fiduciary duty, breach of contract, punitive damages, and attorney fees, and all defendants demand a jury trial and an expedited trial. Additionally, the outside directors and Palsmeier have counter-claimed for bad faith denial of coverage.

Plaintiffs now seek to dismiss the breach of fiduciary duty counter-claims, the bad faith denial counter-claims, and RTC's breach of contract counter-claim. Further, plaintiffs seek to dismiss all claims for punitive damages and attorney fees, and all demands for a jury trial and an expedited trial.

■■■ Under Fed.R.Civ.P. 12(b)(6), a motion to dismiss tests the formal sufficiency of the complaint and is limited to the four corners of that pleading. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–

102, 2 L.Ed.2d 80 (1957). In reviewing the sufficiency of a complaint, all well-pleaded factual allegations must be taken as true and all reasonable inferences must be liberally construed in the claimant's favor. *Weiszmann v. Kirkland & Ellis,* 732 F.Supp. 1540, 1543 (D.Colo.1990).

## I.

■■■ Plaintiff moves to dismiss defendants' counter-claims for breach of fiduciary duty, arguing that such a claim is not recognized by Colorado law. Under the circumstances here, I agree.

In *Farmers Group, Inc. v. Trimble,* 691 P.2d 1138 (Colo.1984), the Colorado Supreme Court first recognized that an insurance company stands in a position similar to that of a fiduciary. Later decisions have characterized this relationship as "quasi-fiduciary." *Allstate Ins. Co. v. Troelstrup,* 789 P.2d 415, 420 (Colo.1990). However, no Colorado court has ever held that an insurance company owes a full fiduciary duty to its insured. Indeed, the opposite is true. *Ballow v. Phico Ins. Co.,* 841 P.2d 344, 350 (Colo.App.1992), ("While an insurance company stands in a position similar to that of a fiduciary, it is not a fiduciary"), *citing with approval, Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986), (Insurer has some duties of a fiduciary but is not a fiduciary).

Nevertheless, defendants argue that "[t]he insurer's duty to adequately inform the insured of significant changes resulting in reductions in coverage is, therefore, necessarily encompassed by the quasi-fiduciary relationship." This argument is nothing more than a restatement of defendants' constructive non-renewal claim. *See, infra,* section VI. Further, the argument is specious. Merely because an insurer has a common-law and statutory duty to inform its insured of reductions in coverage in a renewal policy does not convert a quasi-fiduciary relationship into a full fiduciary relationship. Therefore, I hold that where, as here, the alleged fiduciary duty is rooted in an insurer's duty to inform its insured of

coverage reductions in a renewal policy, allegations of breach of that duty to inform do not give rise to a cognizable claim of breach of fiduciary duty under Colorado law.

## II.

█ Plaintiffs also seek to dismiss the outside directors' and Palsmeier's counter-claims for bad faith denial of coverage. These defendants allege that plaintiffs breached their duty of good faith by unreasonably denying coverage when they knew or should have known that such denials were improper and unreasonable.

In *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo.1985), the Colorado Supreme Court recognized a "first-party" bad faith claim for the unreasonable denial of benefits or coverage. In assessing this claim, courts must determine "whether the facts pleaded show the absence of any reasonable basis for denying the claim." *Farmers Group*, 691 P.2d at 1142. Here, the relevant counter-claims allege that plaintiffs had no reasonable basis for denying coverage because the policy exclusions added after 1985 are void. Defendants contend that plaintiffs should have known that these exclusions are void for lack of proper notice and, therefore, plaintiffs' conduct was unreasonable. Accepting these allegations are true and indulging in all reasonable inferences, I conclude that these defendants state a claim for bad faith denial of coverage.

Plaintiffs reliance on *Ballow* is misplaced. In that case, the court held that an insurance company's decision *not* to renew an existing policy cannot support a bad faith claim. *Ballow, supra,* at 353-54, 1992 WL 119796 at *8, 1992 Colo.App. LEXIS 238 at *20-21. The court reasoned that "it is the insurance contract that creates the special relationship giving rise to the duty of good faith.... However, when an insurer decides not to renew a policy, it has already fully performed its contract and there no longer exists that special relationship giving rise to a duty of good faith." *Id.* at 353, 1992 WL 119796 at *7, 1992 Colo.App. LEXIS 238 at *19. There-

fore, the court refused to extend the duty of good faith to include initial sales and renewal negotiations. *Id.*

In this case, however, defendants complain of plaintiffs' *denial of coverage* under the terms of existent insurance contracts. Plaintiffs' denial of coverage may be unreasonable because the exclusions added after 1985 are void, but this theory is not precluded by *Ballow,* where the insurance contract was fully performed. I conclude that this theory states a cognizable claim that plaintiffs' denial of coverage was in bad faith. Accordingly, plaintiffs' motion to dismiss these counter-claims is denied.

## III.

█ Plaintiffs next move to dismiss RTC's counter-claim for breach of contract. They argue that RTC is not a third-party beneficiary to the insurance contracts between First Federal and plaintiffs. I agree.

█ One not a party to a contract may bring an action on that contract only when (1) the contracting parties intended to benefit the non-party and, (2) the claimed benefit is direct and not merely an incidental benefit of the contract. *See, e.g., E.B. Roberts Const. Co. v. Concrete Contractors, Inc.,* 704 P.2d 859, 865 (Colo.1985). In its counter-claim, RTC merely concludes that it is a third-party beneficiary of the insurance contracts between First Federal and plaintiffs. RTC alleges no facts showing that the contracting parties intended to benefit RTC, nor does it plead any facts showing that the claimed benefit is direct. *See, Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991), ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"). Therefore, plaintiffs' motion to dismiss RTC's breach of contract counter-claim is granted.

## IV.

█ Plaintiffs seek to dismiss all claims for attorney fees incurred in the defense of this action. Defendants contend that their

attorney fees are reimbursable under the terms of the insurance policies. The relevant policy provision states:

No costs, charges and expenses shall be incurred or settlements made without the insurer's consent which consent shall not be unreasonably withheld: however, in the event such consent is given, the insurer shall pay ... such costs, settlements, charges and expenses.

In *Allstate Ins. Co. v. Robins,* 42 Colo. App. 539, 597 P.2d 1052, 1053 (1979), the court held that an insured could recover his fees and costs incurred in defending against the insurer's declaratory judgment action contesting coverage. The court relied on an express clause in the policy which required the insurer to "reimburse the insured for all reasonable expenses ... incurred at the Company's request." *Id.* 597 P.2d at 1053. The court reasoned that the insurer's declaratory judgment suit was a "request" by the insurer for the insured to incur the expense of defending the suit and, thus, held the insurer liable for those expenses "as a matter of contract." *Id. See also, Hedgecock v. Stewart Title Guaranty Co.,* 676 P.2d 1208, 1211 (Colo.App.1983), (Where insured sued insurer for breach of contract, court awarded attorney fees even without express contract language to restore "plaintiff to the position she would have occupied had the company honored its contract of insurance in the first instance").

These cases are dispositive. Plaintiffs brought this declaratory judgment action against their insureds to avoid coverage. Just as in *Robins,* they impliedly consent to the insureds incurring expenses to defend this lawsuit. Therefore, plaintiffs' motion to dismiss is denied.

## V.

■■■ Plaintiffs also move to dismiss defendants' counter-claims for punitive damages, asserting that they are inadequately plead and are not available on contract and equity claims. Having reviewed defendants' counter-claims, I conclude that they adequately allege the requisite willful or wanton conduct. C.R.S. § 13-21-102.

However, plaintiffs are correct that punitive damages are not available on contract claims or claims sounding in equity. *Mortgage Finance, Inc. v. Podleski,* 742 P.2d 900, 902-905 (Colo.1987). Therefore, plaintiffs' motion is granted to the extent that any defendant seeks punitive damages for a claim sounding in contract or equity.

## VI.

■■■ Plaintiffs move to dismiss defendants' demand for a jury trial on all issues so triable. I treat this as a motion to strike pursuant to Fed.R.Civ.P. 12(f). The motion only goes to defendants' claim of right to a jury trial on their constructive non-renewal counter-claims. These counter-claims are based both on common-law doctrine and its codification in C.R.S. § 10-4-110.5. Plaintiffs argue that such claims constitute contract reformation and, thus, sound in equity. Defendants assert that these counter-claims sound in law and, therefore, may be tried to a jury. I agree with plaintiffs.

■■■ In a diversity action, the right to a jury trial in federal court is governed by federal law. *Simler v. Connor,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1962). The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The Supreme Court has construed this language to require a jury trial in those suits that are analogous to common law suits customarily tried in English *law* courts. *Tull v. United States,* 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). In *Granfinanciera v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989), the Court used a two-part analysis to determine whether a cause of action triggers the Seventh Amendment right to a jury trial. First, courts should compare the cause of action to 18th century actions brought in the courts of England before the merger of law and equity. *Id.* Second, and more importantly, courts should examine the remedy sought and determine whether it is legal or equitable in nature. *Id.* This analysis applies to both common law actions

and actions created by statute. *Tull*, 481 U.S. at 417, 107 S.Ct. at 1835.

I must first define the cause of action and, then, compare it with those actions existing in 18th century England. The constructive non-renewal rule holds that an insurer is bound by the greater coverage in an earlier policy where the renewal contract is issued without notifying the insured of the change in coverage. *GEICO*, 400 F.2d at 175; C.R.S. § 10–4–110.5.

> [T]he theory holding the insurer bound by the prior policy is based on the premise that an insurer who fails to call attention to policy changes is guilty of fraudulent or inequitable conduct or has committed an error, and in either event the insured, who has relied on the assumption that the renewal contract provisions remained unchanged, is entitled to recover as though there had been no modification in the policy coverage.

*GEICO*, 400 F.2d at 175.

No Colorado decision has directly adopted this cause of action. However, the Colorado General Assembly enacted a statute that effectively codifies this doctrine. C.R.S. § 10–4–110.5 provides that an insurer must notify its insured of any changes in policy coverage or premiums. If the insurer does not provide the required notice before the policy expires, the insurer is deemed to have renewed the policy for an identical period on the same terms, conditions, and premium as the existing policy. Moreover, recognition of this cause of action is "the majority view" of courts across the country. *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 890 (10th Cir.1991). *See also, Aetna Ins. Co. v. Lythgoe*, 618 P.2d 1057, 1060 (Wyo.1980); Annot., 91 A.L.R.2d 546 (1963). I conclude that Colorado would recognize this cause of action.

 This cause of action did not expressly exist in 18th century England. *See,* William Blackstone, *Commentaries on the Law of England, Book the Third,* Ch. IX (1768). However, I conclude that it is most analogous to the cause of action for contract reformation. Each renewal of an insurance policy is a separate contract that may be enforced as written. *Ballow, supra,* at ——, 1992 WL 119796 at *3, 1992 Colo.App. LEXIS 238 at *8. Thus, once the term of an original policy expires, an insured is normally not entitled to the benefits of that contract but rather is bound by the provisions of a renewal policy, if any. When an insured seeks to incorporate the broader coverage of the original policy into the renewal policy, the terms of the renewal policy are, effectively, reformed. Corbin put the matter well:

> It is reasonable for the insured to assume without reading that a 'renewal' policy is just like the policy that is expiring. If the renewal policy contains an added provision, or omits a provision, reformation is proper.

3 *Corbin on Contracts* § 614, n. 21 (1960).

Likewise, in *Noyes Supervision, Inc. v. Canadian Indemnity Co.*, 487 F.Supp. 433, 435 (D.Colo.1980), the court held that reformation was the proper remedy where a renewal policy contained an exclusion not found in the original policy and the insured did not receive notice of the reduced coverage. *See also, Continental Casualty Co. v. Allen*, 710 F.Supp. 1088, 1094–95 (N.D.Tex.1989); *Mike Occhiato Mercantile Co. v. Allemannia Fire Ins. Co.*, 98 F.Supp. 888, 892 (D.Colo.1951). Because contract reformation was an equitable cause of action in 18th century England, I conclude that the first prong of the Seventh Amendment test is not satisfied. *See,* Blackstone, *supra,* Ch. XXVII.

As to the second prong, it is well settled that the remedy of reformation is equitable in nature. *See, e.g., Hunt v. Rousmaniere*, 26 U.S. (1 Pet.) 1, 10–11, 7 L.Ed. 27 (1828); *Jackson Enterprises, Inc. v. Maguire*, 144 Colo. 164, 355 P.2d 540, 542 (1960); *Restatement (Second) of Contracts* § 155, comment d (1979); 1 *Pomeroy's Equity Jurisprudence* § 188 (4th ed.1918). Therefore, I hold that defendants' do not have a right to a jury trial on their constructive non-renewal counter-claims.

 Nor does it matter that the alignment of the parties is reversed in a declaratory judgment action. If defendants had

filed first, they still would have to prevail on their reformation/constructive non-renewal claim before they could recover money damages on their separate claim of breach of the insurance policy. In *Hill v. Stanolind Oil & Gas Co.*, 119 Colo. 477, 205 P.2d 643, 650–51 (1949), the court recognized that:

> Where circumstances justify reformation of a writing, affecting the contractual relations of the parties to the writing, a court may in its discretion without a preliminary decree of reformation give effect to the transaction as if it had been reformed.... The judgment may confer only the final legal remedy, *the preliminary equitable relief being assumed* as a prerequisite, but not in terms awarded. (Emphasis added).

Thus, the equitable character of reformation does not change merely because defendants could have sought this remedy within a law suit for money damages.

Defendants also argue that contract reformation is limited to instances of mutual mistake or fraud and, therefore, the constructive non-renewal cause of action cannot be analogous to reformation. However, a constructive non-renewal claim is, in effect, a distinct legal theory on which a court can base reformation. Once again, Corbin puts the matter in perspective:

> Reformation may be a proper remedy even though the mistake is not mutual. If one of the parties mistakenly believes that the writing is a correct integration of that to which he had expressed his assent and the other party knows that it is not, reformation may be decreed. The conduct of the other party in permitting the first to execute the erroneous writing and later attempting to enforce it may be regarded as fraudulent; but it is enough to justify reformation that he knows the terms proposed by the first party and the meaning thereof and leads that party to reasonably believe that he assents to those terms. This makes a contract; and the writing may be reformed to accord with it.

3 *Corbin on Contracts* § 614 (1960). Hence, because defendants' constructive

non-renewal counter-claims sound in equity, plaintiffs' motion to strike their demand for a jury trial is granted.

## VII.

Lastly, plaintiffs move to dismiss defendants' requests for an expedited trial. Again, I will treat this as a motion to strike under Rule 12(f). I recognize that 12 U.S.C. § 1821(q)(2) requires all federal courts to expedite the consideration of any case brought by the RTC against former directors and officers of failed financial institutions. Plaintiffs are concerned that their discovery and trial preparation will suffer if the case proceeds too quickly. Their fears in this respect are unfounded, however, given the state of my criminal docket. Therefore, the motion is denied.

Accordingly, IT IS ORDERED THAT:

(1) Plaintiffs' motion to dismiss is GRANTED in part and DENIED in part;

(2) RTC's second counter-claim, the outside directors' second counter-claim, Haskin's second counter-claim, and Palsmeier's second counter-claim for breach of fiduciary duty are DISMISSED;

(3) RTC's third counter-claim for breach of contract is DISMISSED;

(4) All counter-claims for punitive damages related to any claim sounding in contract or equity are DISMISSED;

(5) All demands for a jury trial of defendants' first counter-claims for constructive non-renewal are STRICKEN.

(6) Plaintiffs' motion is DENIED as to Palsmeier's and the outside directors' counter-claims for bad faith denial of coverage; and,

(7) Plaintiffs' motion is DENIED as to defendants' requests for an expedited trial.